### TOWN OF FAIRFIELD
*vs.*
### CHARLES FLEISHER ET AL.

Superior Court      Fairfield County      File No. 65069

MEMORANDUM FILED AUGUST 7, 1944.

*Finkelstone and Finkelstone,* of Bridgeport, for the Plaintiff.

*Pullman and Comley,* of Bridgeport, for the Defendant.

MURPHY, J.   Pursuant to the provisions of chapter 26 of the General Statutes, Revision of 1930, the Town Plan Commission of the Town of Fairfield at a meeting duly warned and held for that purpose on January 24, 1936, approved and recommended for a public hearing the proposed layout of a street line on the west side of Park Avenue between the Fairchild Wheeler Golf Course and a point opposite the Trumbull line, all as shown on a map dated January 16, 1936, made by Andrew S. Huntington, civil engineer.

The plaintiffs, brothers, were the owners in common of approximately five acres of meadow and pasture land immediately north of the golf course.   It had a frontage of 413 feet on Park Avenue.

Then, Park Avenue in this neighborhood was a winding country dirt road about fifteen feet wide which served as the

boundary between Bridgeport and Fairfield. In the proposed layout, the center line of the road was to be straightened and the road widened to eighty feet. This would take a strip along the easterly edge of plaintiffs' land, eight feet wide at the north. It also included the old fashioned dry stone wall which bounded the property on the east.

Charles Fleisher lived at 344 Hancock Avenue, Bridgeport, over a butcher market which he operated for "Fleisher Bros.", a partnership of his brother Louis and himself. Louis Fleisher lived at 85 Park Avenue Extension in Bridgeport. His home was on the east side of Park Avenue and a little to the north of the property involved in this suit. He conducted a dairy farm for his brother Charles and himself. The property in question was used to raise alfalfa for hay and also for pasturage of the dairy herd.

On January 31, 1936, the clerk of the Commission deposited in the office of the Town Clerk the approved map and it bore the notation: "Recommended by the Town Plan Commission January 24, 1936, Henry B. Stoddard, Chairman." On the same day notice was mailed to Charles and Louis Fleisher, 344 Hancock Avenue, Bridgeport, Connecticut, of the approval and filing of said map and that a public hearing of all persons claiming to be affected thereby would be held February 11, 1936. Notice by publication in a daily newspaper having a circulation in Fairfield was made the same day.

At the public hearing but three of the eight members of the Commission were present. Charles Fleisher admittedly appeared at the hearing and opposed the taking of his land. Louis Fleisher denies being present though the minutes of the hearing record him as attending and opposing the layout. At the conclusion of the hearing the meeting was declared closed.

The linen map was removed by the clerk of the Commission from the Town Clerk's office for the hearing and was never returned. On July 25, 1936, a duplicate map of heavy white cloth was filed and is of record.

Thereafter, at a meeting on March 2, 1936, which was duly warned for the purpose, the Commission unanimously adopted the layout and map. Benefits and damages were assessed equal and the clerk was instructed to notify the property owners of the awards, to monument the street layout and prepare map for recording with the Town Clerk. Five members of the Com-

mission were present. On March 5, 1936, notice of the adoption and award was mailed to Charles and Louis at the Hancock Avenue address but both deny receiving it. No appeal was taken and subsequently the road was widened to provide the approach to the Merritt Parkway. The stones from the stone wall were used as part of the foundation for the roadway.

In May of 1942, the plaintiffs instituted this action, seeking damages and a declaratory judgment declaring the taking to be unlawful and that the title and right to possession is in the plaintiffs and that the defendant has no right, title or interest therein.

Their contention is that the taking is unlawful because:

1. Chapter 26 of the General Statutes, Revision of 1930, is unconstitutional.

2. No notice of the proposed layout was given to Louis.

3. A majority of the members of the Commission were not present at the public hearing on February 11, 1936, and a quorum was lacking.

4. As the meeting adjourned without action being taken, the matter was terminated and no further action could be taken without going through all of the preliminary steps.

5. No notice was given to either Charles or Louis of the meeting on March 2, 1936.

6. No notice was received by either, of the award of benefits and damages and the adoption of the layout.

7. The award as made was improper and invalid because definite assessments of benefits and damages were not made but both were categorically found equal.

8. No map of the proposed layout was on file in the Town Clerk's office as required by statute until July 25, 1936.

9. The layout was not monumented by the clerk.

The statute providing for a town plan commission, its duties and powers (Gen. Stat. [1930] chap. 26) is not unconstitutional. It provides for notice by mail and public advertisement of the hearing on the proposed relocation of the highway. There is no attempt to take property for public use without

notice to the record owner. *West Hartford vs. Coleman,* 88 Conn. 78, 81.

Section 406 of the General Statutes, Revision of 1930, re-quires the commission to give notice to each record owner of land included in such map or plan by mail and by advertising. Despite the fact that the address to which the notice of the hearing was sent was the address appearing upon the assessors' records and was the address to which tax bills were sent, it was not Louis' address. He was the owner of record of an un-divided one-half interest in the property and as such was en-titled to notice sent to him properly addressed. The joint notice to the two brothers at the Hancock Avenue address was not sufficient compliance with the statute. His address was 85 Park Avenue Extension, Bridgeport, and his notice should have been sent there.

However, the failure to give the required notice may be waived by the conduct of the party. The minutes of the pub-lic hearing of February 11, 1936, recite that both Charles and Louis were present and opposed the plan. From examination of the minutes it is apparent that the clerk was careful to record the names of the property owners who were present, those who were absent, and those who were represented though absent. Also, the attitude of those present was ascertained and recorded.

The notice to the brothers was deposited in the Fairfield post office, January 31, 1936. That was a Friday. Normally it would have been delivered in Bridgeport on Saturday or by Monday at the latest. Charles stated that he visited his brother and their Park Avenue property every other day. Yet he states that he did not talk with Louis about the hearing until some time after it was held. Doesn't it seem probable that after receiving the notice addressed to both of them at his address, he would show it to or tell Louis of it? At least a week intervened between his receipt of the notice and the hearing. Also, it appears that one of the brothers and his attorney raised no question about the correctness of minutes of the public hearing when they met with the Commission on April 14, 1942, and the minutes of the hearing and also the meeting of March 2, 1936, were read and discussed. The court can only conclude that the minutes of the hearing cor-rectly record the presence of those who appeared at the hear-ing and that Louis by his attendance waived the defect in the

notice as to him. 2 *Nichols, Eminent Domain* (2nd ed. 1917) §406; 5 *McQuillin, Municipal Corporations* (2nd ed. 1928) §2161.

The obvious purpose of the statute as to notice is to acquaint the property owners affected with the proposed layout so that they will have the opportunity to protect their interests. *Hartford Trust Co. vs. West Hartford,* 84 Conn. 646, 651.

Was a quorum necessary at the public hearing? No action was taken by the Commission on that date. After the interested parties had been heard the hearing was closed. The plaintiffs apparently do not draw a distinction between the hearing at which the parties concerned have the opportunity of being heard and the meeting at which the Commission acts. No valid action could have been taken February 11th. None was attempted. While it is advisable that a majority of the Commission should attend the public hearing (*Strain vs. Mims,* 123 Conn. 275, 282-3), the lack of a majority will not invalidate action subsequently taken at a meeting properly called and at which sufficient members are present.

The meeting on March 2nd was called for the purpose of taking action on the proposed layout. Five, a majority, of the members were present. The layout was legally adopted. Gen. Stat. (1930) §409; *Strain vs. Mims, supra,* p. 281.

The hearing of February 11th was not .a meeting of the Commission at which action on the proposal could have been taken in the absence of any warning to the members. Gen. Stat. (1930) §409. It was restricted to discussion and no business was transacted. No attempt was made to adjourn it. When the interested parties had been heard, the meeting was declared closed.

"We are not disposed too rigorously to apply technical rules to the action of administrative boards and commissions." *Strain vs. Mims, supra,* p. 283.

No notice to the property owners of the meeting on March 2nd was necessary. Section 406 provides: "Such commission, *after such hearing,* may approve and adopt", etc. (italics added). It did not provide for notice to others than members of the Commission of the meeting which necessarily had to come after the hearing of the property owners concerned.

After the adoption of the layout and the award of benefits and damages, notice of such action should have been given to the persons affected so that they could appeal to the Superior Court. Gen. Stat. (1930) §407.

The statute is silent as to the type of notice that is required. In view of the provisions of section 406 prescribing notice to each record owner, by mail, of the hearing upon the layout, it would seem consistent to expect similar notice with respect to the action of the Commission.

The records of the Commission show that the notice of the adoption and award of benefits and damages were sent to Charles and Louis Fleisher at 334 Hancock Avenue, Bridgeport, by notice mailed from the Fairfield post office on March 5, 1936. But the record does not show that this notice was sent postage prepaid. Both plaintiffs deny receiving this notice.

Whether the failure of the record to indicate that the notice had been mailed postage prepaid invalidates the taking is doubtful in view of the fact that the plaintiffs had attended the public hearing on February 11th, coupled with the fact that both plaintiffs acquired actual knowledge later in 1936 or in early 1937 when entry was made upon the land, the stone walls were torn down and the road widened.

"Entry [upon the land] in itself would be notice amply sufficient to enable him to protect his rights." 2 Nichols, Eminent Domain (2nd ed. 1917) §336.

"While it is true that laws depriving owners of their property should be strictly construed, yet 'all laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will....therefore be presumed that the legislature intended exceptions to its language, which would avoid results of this character'." Conners vs. New Haven, 101 Conn. 191, 199.

The time within which the plaintiffs could have appealed would run from the time that they actually knew of the entry upon their lands if notice was not properly sent to them.

The action of the Commission in assessing benefits and damages equal against all of the property owners affected by the layout is contrary to sound practice and in conflict with

the law of this State. *Hoyt vs. Stamford,* 116 Conn. 402, 407; *Tyler vs. Darien,* 115 id. 611, 618.

The Commission should have determined the benefits that would accrue to the plaintiffs' property by reason of the new layout and also determine the damages sustained thereby. The rule for determining the damages is the difference between the value of the tract before the taking and the market value of what remained after the taking and after the completion of the improvement.

By their failure to appeal to the Superior Court, as indicated heretofore, they have forfeited their right to have the damages re-assessed and because of their laches, cannot now attack the matter collaterally.

"If they were aggrieved by the action of the city, they should have made demand for redress promptly and pushed it diligently. The law does not favor and serve those who sleep on their rights." *Johnston vs. Hartford,* 96 Conn. 142, 155.

Though the map of the layout was not indexed in the Town Clerk's records until July 25, 1936, when a duplicate was recorded, it was in fact in the Town Clerk's office from January 31, 1936, until February 11, 1936, when it was removed to the public hearing.

To file means "to deliver (a paper or instrument) to the proper officer so that it is received by him to be kept on file, or among the records of his office." *Webster's New International Dictionary* (2nd ed.).

Sec. 406 of the General Statutes, Revision of 1930, provides that the Commission, upon the filing of such map, shall give notice of the filing and of the time and place of the hearing to the record owners. The purpose of having the map on file is to permit the interested parties to examine it before the hearing so that they can protect their rights.

When the map was placed in the keeping of the Town Clerk it should have been indexed and kept with the other records of the office, subject to being used by the Commision at the hearing. Though the Commission did not comply fully with the letter of the statute, it did comply with the intent. The plaintiffs were not harmed by the failure to index it and the deposit of the map on January 31, 1936, as verified by the endorsement of the Assistant Town Clerk "Rec'd Jan. 31,

1936 preliminary to public hearing", is construed as sufficient compliance with the statute under the circumstances.

The clerk did not monument the widened thoroughfare though directed to do so by the Commission on March 2, 1936. However, it does not appear from the evidence that monuments were not established. As to the need of monuments there is a question. Section 1464 of the General Statutes, Revision of 1930, and the regulations of the Commission only require monuments for new highways.

. Judgment for the defendant.