**Mark D. AMBROSE and Jennifer L. Ambrose, pro se, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 11–64T.

United States Court of Federal Claims.

Aug. 3, 2012.

Mark D. Ambrose and Jennifer L. Ambrose, acting pro se, plaintiffs.

Gregory S. Knapp, Tax Division, United States Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General John A. DiCicco, for defendant.

## OPINION

ALLEGRA, Judge:

In this tax refund suit, plaintiffs claimed a casualty loss deduction under section 165 of the Internal Revenue Code of 1986 (the Code) based on the loss of their home to a fire. Although their home was insured, plaintiffs failed to file, on a timely basis, documentation required by their policy, and coverage was denied. Plaintiffs challenged that denial in court, but lost. They then took the deduction in question on their Federal income tax return. At issue is whether plaintiffs' failure to provide timely proof of their loss to their insurer prohibited them from deducting their loss under section 165(h)(5)(E) of the Code, which limits the availability of deduction of a loss covered by insurance if the taxpayer fails to "file a timely insurance claim with respect to such loss." Claiming that plaintiffs' conduct triggered this limitation, defendant has moved to dismiss their complaint under RCFC 12(b)(6). Finding otherwise, the court **DENIES** defendant's motion.

1. These facts are primarily drawn from plaintiffs' complaint and, for purpose of this motion, are assumed to be correct. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). For the reasons explained below, other facts are taken from documents filed by defendant that are referenced in plaintiffs' complaint.

2. The last of these provisions stated—

 **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

 * * * * * *

 g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

## I. BACKGROUND [1]

In August of 2002, plaintiffs Mark and Jennifer Ambrose (plaintiffs or the Ambroses), now divorced, took out a homeowners insurance policy with Farm Family Casualty Insurance Company (Farm Family) on their residence in Auburn, New York. That policy covered their home, other structures on the premises, personal property, and loss of use in the event of a fire or other "peril insured against" up to a limit of $216,000, subject to a $250 deductible. As is typical, this coverage was subject to a number of conditions. The policy, for example, did not cover an "intentional loss" arising out of an act committed "[b]y or at the direction of an 'insured'; and/ . . . [w]ith the intent to cause a loss." One of the policy provisions listed the insured's "Duties After Loss," and required, in pertinent part, that the policy holder: (i) "[g]ive prompt notice to us or our agent;" (ii) "[p]repare an inventory of damaged personal property," and (iii) within 60 days of Farm Family's request, supply various proof of loss.[2] Finally, the policy was "void if, whether before or after a loss, an 'insured' has: (a) Intentionally concealed or misrepresented any material fact or circumstance; (b) Engaged in fraudulent conduct; or (c) Made false statements; relating to insurance."

In November 2002, the Ambroses' home was damaged by a dryer fire. In fulfillment of its obligations under the Ambroses' homeowners policy, Farm Family contracted with Diamond's Air Clean and Construction (Dia-

(1) The time and cause of loss;
(2) The interest of the "insured" and all others in the property involved and all liens on the property;
(3) Other insurance which may cover the loss;
(4) Changes in title or occupancy of the property during the term of the policy;
(5) Specifications of damaged buildings and detailed repair estimates;
(6)The inventory of damaged personal property described in 2.e above;
(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and
(8)Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

mond) to repair the fire, smoke, and water damage, while the Ambroses temporarily relocated to a nearby motel. In the early hours of December 25, 2002, a second, more serious fire occurred in the Ambrose residence, totally destroying the home.

According to Farm Family's business records, Mark Ambrose reported this loss to the company at 8:41 AM on December 26, 2002. The form reflecting this indicates that the "Person Reporting this Claim" is "Mark–Ambrose–Insured," and lists various details regarding the claim, including a "Claim Number." That same day, Farm Family generated a "Claim Report Sheet—Non Auto" that listed various details about the fire; this sheet listed the aforementioned "Claim Number" and a "Report Date" of December 26, 2002. On December 27, 2002, an adjuster met with plaintiffs and conducted an inspection of the property, as well as an interview. The record includes a "State of New York Standard Fire Claim Form," which refers to the aforementioned "Claim No." and contains various details that apparently were derived by the adjuster from his inspection and interview. This form was signed by Mr. Ambrose, as the "Claimant," on that same day.

Plaintiffs allege that the second December fire was caused by Diamond's negligent workmanship. On January 29, 2003, Farm Family sent plaintiffs a letter, via both certified and regular mail, indicating that the company's "claim file that pertains to the destruction of your residence ... has been reviewed." The letter noted that at the December 27, 2002, meeting, the adjuster requested that plaintiffs provide him with a "Personal Property Inventory" and indicated that at the time of the letter, Farm Family had "not received any documentation from you to present your personal property loss." This letter quoted the provisions of the policy conditioning the payment of claims, including paragraph g. quoted above, and then stated—

> We are also enclosing our Sworn Statement in Proof Loss form, and we are asking that, within 60 days of this written request, you submit to us your signed, sworn proof of loss which sets forth, to the best of your knowledge, the information requested by the policy, [sic] the enclosed blank Sworn Statement In Proof of loss form is to assist you in meeting the conditions of this section of your policy.

On or about February 4, 2003, plaintiffs retained an attorney, who contacted Farm Family inquiring whether anything else was required to process the Ambroses' claim beyond the information previously taken. On March 26 and April 7, 2003, a Farm Family representative conducted an examination under oath of each of the plaintiffs. Plaintiffs assert that they never received either the certified or regular mail version of the January letter. They allege that Farm Family did not request the sworn proof of loss until the April 7, 2003, examination, and that their attorney timely returned the sworn proof of loss on April 23, 2003.

On June 12, 2003, Farm Family sent plaintiffs a letter denying coverage for the December 25th fire. The letter explained that plaintiffs were not entitled to insurance coverage for the loss of their home because the insurance company's "investigation has revealed that it is highly probable that you intentionally and deliberately caused or procured that fire," thereby triggering one of the listed coverage exclusions. Additionally, the letter indicated that Farm Family was denying coverage under the Concealment of Fraud condition in the policy because, "during the course of our investigation of the reported fire loss and your claim," plaintiffs denied involvement in the fire and did not explain various cash advances debited against their credit cards. Finally, the letter indicated that—

> We also find that you breached the above-quoted condition of the policy that required you to send to us your signed, sworn proof of loss within 60 days after our request. By letter dated January 29, 2003, Farm Family requested that you complete and submit within 60 days a signed, sworn proof of loss with respect to your fire loss of December 25, 2002. During the continuation of Mr. Ambrose's examination under oath on April 7, 2003, Mr. Ambrose confirmed that he received that January 29, 2003 letter. During that ex-

amination under oath, it also became apparent that you also received the blank proof of loss form enclosed with that letter. Despite your having received that letter and form within days of January 29, 2003, you did not submit your signed, sworn proof of loss to us until April 23, 2003, more than 60 days after our request, in material breach of the above-quoted policy condition. For this additional but separate reason, Farm Family must decline to make payment to you for your loss of December 25, 2002.

Neither in this letter, nor at any other point time, did Farm Family ever indicate to plaintiffs that they had failed to file a timely claim or that any such failure was the basis for the denial of coverage.

On September 30, 2003, plaintiffs filed suit in a branch of the New York Supreme Court against Farm Family for breach of contract, negligence, and bad faith. On February 6, 2004, the New York Supreme Court granted Farm Family's motion for summary judgment as to the Ambroses' breach of contract and negligence claims. It held that the Ambroses had received Farm Family's letter of January 29, 2003, but failed to complete and submit their proof of loss within the required sixty-day period. Noting that "[c]ompliance with a proof of loss provision as a condition precedent to recovery under a policy has long been recognized in New York State," the state court found Farm Family had not breached its duties under the insurance contract. On October 19, 2004, the state court granted, as well, Farm Family's motion to dismiss the Ambroses' bad faith claim.

Meanwhile, on the same date they sued Farm Family, September 30, 2003, the Ambroses also sued Diamond for the losses they suffered in the December 25 fire, alleging negligence and breach of contract. In November 2007, a jury found in favor of Diamond and the New York Supreme Court subsequently dismissed the Ambroses' case with prejudice on January 16, 2008.

Following the final disposition of these lawsuits, the Ambroses filed an amended federal income tax return for 2007, in which they deducted a casualty loss of $167,619. The deduction eliminated plaintiffs' tax liability, leading them to claim a refund of $16,254. On January 21, 2009, the Internal Revenue Service (IRS) notified the Ambroses that their return was to be examined. Following that examination, the IRS, on April 1, 2009, notified the Ambroses that their claim for refund had been denied. The Ambroses protested this decision, but on June 15, 2010, were informed by the IRS that their claim was "fully disallowed" because they had failed to file a "timely insurance claim" as required by § 165(h)(5)(E).

On January 28, 2011, Mark Ambrose filed suit in this court seeking a tax refund based on the 2007 casualty loss disallowed by the IRS.[3] On July 8, 2011, the court granted defendant's motion to join Jennifer Ambrose in the suit. On September 7, 2011, defendant filed a motion to dismiss the complaint under RCFC 12(b)(6). Two rounds of briefing (the original round and a supplemental round ordered by the court on January 23, 2012), have now been completed. Oral argument is deemed unnecessary.

## II. DISCUSSION

■■■ Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997); *see also Twombly*, 550 U.S. at 554–55, 127 S.Ct. 1955. To survive a motion to dismiss for failure to state a claim under RCFC 12(b)(6), the complaint must have sufficient "facial plausibility" to "allow [ ] the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Klamath Tribe Claims Comm. v. United States*, 97 Fed.Cl. 203, 208 (2011). The plaintiff's factual allegations must "raise a right to relief above the speculative level" and cross "the line from conceivable to plausible." *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955;

---

**3.** This court lacks jurisdiction over the portion of the complaint that seeks a refund of $6,746 in New York state income taxes. *See* 28 U.S.C. § 1491(a).

*see also Dobyns v. United States,* 91 Fed.Cl. 412, 422–28 (2010) (examining this pleading standard). Nevertheless, the Federal Circuit has reiterated that "[i]n ruling on a 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed. Cir.2009); *see also Bank of Guam v. United States,* 578 F.3d 1318, 1326 (Fed.Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3468, 177 L.Ed.2d 1056 (2010); *Petro–Hunt, LLC v. United States,* 90 Fed.Cl. 51, 68 (2009).

■ When deciding a motion to dismiss, courts "generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). In the latter category are certain documents from prior state court adjudications, which, in this case, includes various documents from the prior New York state proceedings. *See Giragosian v. Ryan,* 547 F.3d 59, 66 (1st Cir.2008). The court's review may also encompass any documents upon which the complaint relies heavily, at least to the extent the authenticity of those documents is undisputed. *See Bldg. Indus. Elec. Contractors Ass'n v. City of New York,* 678 F.3d 184, 187 (2d Cir.2012); *Parker v. Hurley,* 514 F.3d 87, 90 n. 1 (1st Cir.2008).[4] In this case, those documents include the insurance policy at issue, as well as various insurance documents found in the records of Farm Family that were generated at or around the time of the fire in question.

Section 165(a) allows, as a general rule, deductions for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." 26 U.S.C. § 165(a); *see also Cottage Sav. Ass'n v. Comm'r of Internal Revenue,* 499 U.S. 554, 567, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991); Treas. Reg. § 1.165–1(a).[5] Cabining this loss deduction, section 165(c)(3) states that "[i]n the case of an individual, the deduction under subsection (a) shall be limited to—... (3) except as provided in subsection (h), losses of property not connected with a trade or business or a transaction entered into for profit, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." *Id.* at § 165(c)(3); *see also Maher v. Comm'r of Internal Revenue,* 680 F.2d 91, 91 (11th Cir. 1982). Completing the relevant statutory scheme, section 165(h)(5)(E) states that "[a]ny loss of an individual described in subsection (c)(3) to the extent covered by insurance shall be taken into account under this section only if the individual files a timely insurance claim with respect to such loss." *Id.* at § 165(h)(5)(E); *see also* 7 Jacob Mertens, Mertens Law of Fed. Income Tax'n § 28:29 (2012).[6]

Invoking the last of these provisions, defendant urges that plaintiffs are not entitled to deduct a casualty loss for the fire that destroyed their home because they failed to "file[ ] a timely insurance claim" with respect to this loss. Defendant maintains this despite clear indications that Mr. Ambrose filed

---

4. As these cases indicate, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Arthur v. Thomas,* 674 F.3d 1257, 1265 (11th Cir.2012) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997)).

5. The deduction for casualties has one of the oldest histories of any revenue provision. The first version of it was included in the Revenue Act of 1867, which allowed as a deduction "losses actually sustained during the year arising from fires, shipwreck, or incurred in trade." Revenue

Act of 1867, ch. 169, § 13, 14 Stat. 471 (1867). The references to "insurance" found in section 165(a) were added by the Act of 1894, ch. 349, § 28, 28 Stat. 509, 553 (1894). That Act was declared unconstitutional in *Pollock v. Farmers' Loan Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895), leading to the passage of the Sixteenth Amendment. Following that amendment, language similar to the current section 165(a) resurfaced in the Revenue Act of 1913, ch. 16, § IIB, 38 Stat. 167 (1913). *See* John Seidman, Seidman's Legislative History of Federal Income Tax Laws (1938–1861) 1018 (1938) (hereinafter "Seidman's (1938–1861)").

6. Former section 165(h)(4) was redesignated as section 165(h)(5) by the Heartland Disaster Tax Relief Act of 2008, Pub. L. No. 110–343, § 706(a)(1).

a claim with Farm Family less than four hours after the fire in question. Various business records confirm this, among them several Farm Family "claim reports," dated December 26, 2002 (the day of the fire), that refer to a "claim" being filed by Mr. Ambrose, reflect a "claim number" and list the details of the claim. The record also includes a "State of New York Standard Fire Claim Form," signed by Mr. Ambrose on December 27, 2002, which reiterates the salient details of the claim he made the day before. Yet, despite these documents, defendant stubbornly maintains that plaintiffs failed to file a timely insurance claim because they failed to provide Farm Family with the "proof of loss" within the time specified in their policy. Defendant notes that this failure was one reason why Farm Family declined coverage—a decision later upheld in state court. And it contends that under the "plain meaning" of section 165(h)(5)(E) this same failure precludes plaintiffs from deducting the casualty loss that was not covered by their insurer. This contention is plausible *a priori*, but only if one is inclined, as defendant apparently is, to disregard the words that Congress actually enacted.

Before turning to those words, a little context is helpful: Prior to the enactment of section 165(h)(5)(E), a number of courts considered whether, under section 165(a), a taxpayer's election not to file an insurance claim for a loss precluded him from deducting the loss. In these cases, which involved casualty or theft losses, the IRS argued that the loss in question derived not from the casualty or theft itself, but from the taxpayer's intervening decision not to file an insurance claim.[7] It contended that, as a result of the latter

decision, the deduction did not correspond to a loss "sustained ... and not compensated for by insurance or otherwise," as required by section 165(a). *See* Rev. Rul. 78–141, 1978-1 C.B. 57 (1978). While this argument met some initial success, *see, e.g., Kentucky Utilities Co. v. Glenn*, 394 F.2d 631 (6th Cir.1968), ultimately it was soundly rejected by the courts, first by the specialized U.S. Tax Court, and then by various appellate decisions affirming the decisions of that tax tribunal. *See Miller v. Comm'r of Internal Revenue*, 733 F.2d 399 (6th Cir.1984), *aff'g*, 42 T.C.M. (CCH) 665 (1981); *Hills v. Comm'r of Internal Revenue*, 691 F.2d 997 (11th Cir.1982), *aff'g*, 76 T.C. 484 (1981). In these cases, the taxpayers were allowed to deduct casualty losses under section 165 even though they failed to file insurance claims. *See* Boris I. Bittker & Lawrence Lokken, Federal Tax'n Income, Est. & Gifts ¶ 34.4 (2012).

By way of rationale, these courts held that the plain meaning of the language in section 165(a) precluded an interpretation "either (a) that a taxpayer must exhaust all reasonable prospects for insurance indemnification before claiming a 'sustained loss,' or (b) that the phrase 'not compensated by' must be equated with the phrase 'not covered by' insurance." *Miller*, 733 F.2d at 402. On the former count, they rejected the notion that a taxpayer only sustains a loss after exhausting all reasonable prospects for insurance recovery because that interpretation would render the clause "not compensated by" in section 165(a) "mere surplusage." *Id.* at 402; *see also Hills*, 691 F.2d at 1001 ("the Commissioner's definition of loss renders the second 'and not compensated' clause surplusage").[8]

---

7. Defendant made similar arguments in cases arising under section 213 of the Code, involving medical expenses. *See Weaver v. Comm'r of Internal Revenue*, 49 T.C.M. (CCH) 249 (1984); *see also Jewell v. Comm'r of Internal Revenue*, 69 T.C. 791 (1978).

8. *Hills* viewed the statute as employing a two-step analysis, requiring first that a determination be made as to whether there was a loss and then whether the loss was "compensated for by insurance or otherwise." 691 F.2d at 1001. The court observed that a potential recovery from a principal, such as an indemnificatory, should be considered in the first part of this analysis. *Id.*

The Eleventh Circuit found that the Commissioner's arguments collapsed the two-part analysis into a single consideration of whether a loss had been sustained. The court rejected this analysis because it rendered the "and not compensated" clause of section 165(a) superfluous, violating the well-known canon of statutory construction. *Id.* at 1002. *See also* Ann–Catherine Blank, "Income Tax—Deductions—An Insured Taxpayer is Not Required to Seek Reimbursement Before Claiming a Casualty Loss Deduction Under Section 165—*Miller v. Commissioner*, 733 F.2d 399 (6th Cir.1984)," 53 U. Cin. L. Rev. 1125, 1131 (1984).

Likewise, these courts refused to interpret the phrase "compensated for by" insurance to mean "covered by" insurance, based not only on the plain language of section 165, but also on the statute's legislative history. *See Miller,* 733 F.2d at 403; *Hills,* 691 F.2d at 1000.[9] Refusing to conflate these terms, the courts noted that in enacting the original version of section 165, Congress chose to eliminate the word "covered" from the House version of the bill, which would have granted a deduction only for "losses ... not covered by insurance or otherwise compensated for." *Miller,* 733 F.2d at 402; *Hills,* 691 F.2d at 1000.[10] On this basis, the courts found that the taxpayers had incurred a "loss" irrespective of whether they subsequently pursued recovering under their insurance policy. *Hills,* 691 F.2d at 1001.[11]

In 1986, Congress intervened, denying a loss deduction under section 163(c)(3) for any loss covered by insurance unless "the individual files a timely insurance claim with respect to such loss." *See* Tax Reform Act of 1986, Pub. L. No. 99–514, Title IX, 905(a), Title X, 1004(a), 100 Stat. 2385 (1986); *see also* 7 Jacob Mertens, Mertens Law of Fed. Income Tax'n § 28:34 (2012). Citing *Hills* and *Miller,* the accompanying House Committee Report noted that "[c]ertain courts have ruled that a taxpayer whose loss was covered by an insurance policy could nevertheless deduct the loss if the taxpayer decided not to file a claim under the terms of the insurance policy." H.R.Rep. No. 99–426, at 658 (1985).[12] This report then described the impetus for the new provision thusly:

> The deduction for personal casualty losses should be allowed only when a loss is attributable to damages to property that is caused by one of the specified types of casualties. Where the taxpayer has the right to receive insurance proceeds that would compensate for the loss, the loss suffered by the taxpayer is not damage to property caused by the casualty. Rather, the loss results from the taxpayer's personal decision to forego making a claim against the insurance company. The committee believes that losses resulting from a personal decision of the taxpayer should not be deductible as a casualty loss.

---

9. Thus, in *Hills,* Judge Goldberg, writing on behalf of the court, observed that—

 The disposition the Commissioner favors in this case would deny a section 165 deduction any time a loss is covered by insurance. This is functionally equivalent to reading the statute *as if it said "not covered by insurance."* It is sufficient to point out that "covered" also has a plain meaning rather different from that of "compensated," and that this Court must enforce the statute Congress actually enacted. *Hills,* 691 F.2d at 1000.

10. In *Hills,* the Eleventh Circuit explained that—

 The initial House Ways and Means committee language was "losses ... not covered by insurance or otherwise compensated for." The Senate Finance Committee amended the language to its final and enacted form of "losses ... not compensated for by insurance or otherwise." This change makes clear the fact that Congress was aware of the difference between "covered" and "compensated" and intended to enact what it in fact enacted.
 691 F.2d at 1000. *See also Hills,* 76 T.C. at 487; Seidman's 1938–1861, *supra,* at 1018; *see also* Matthew J. Barrett, Stephen J. Dunn, & Robert H. Kurnick, Jr., "Tax Law—*Miller v. Commissioner:* Deductibility of Casualty Losses After Voluntary Election Not to File an Insurance Claim," 60 Notre Dame L. Rev. 405 (1985).

11. *See also Weaver,* 49 T.C.M. (CCH) at 252 ("a deduction for a loss under section 165 is not precluded by the failure of the taxpayer to claim reimbursement under existing insurance"); *Orvis v. Comm'r of Internal Revenue,* 48 T.C.M. (CCH) 1295, 1299 (1984) ("If the taxpayer elects not to take the risk of claiming proceeds, by insurance or otherwise, and does not, in fact, receive compensation for the loss, section 165(a) permits the deduction."); *O'Neill v. Comm'r of Internal Revenue,* 46 T.C.M. (CCH) 1476, 1479–80 (1983) (following *Hills* ); *Grigsby v. Comm'r of Internal Revenue,* 47 T.C.M. (CCH) 620, 621 (1983) (same); John Robinson & Allen Ford, "Casualty Losses: Reimbursement Claims and Implications for Deductibility," 63 Taxes 355 (1985).

12. The legislative history indicates that the Administration's tax proposal would have adopted the rule enunciated in *Hills* and *Miller. See* The President's Tax Proposals to the Congress for Fairness, Growth, and Simplicity 269 (May 1985); *see also* Jt. Comm. on Tax'n, Tax Reform Proposals: Rate Structure and Other Individual Income Tax Issues, at 182 n. 36 (Aug. 12, 1985). Various bills would have disallowed the deduction entirely, by repealing Code sections 165(c)(3) and 165(h). *Id.* at 182. The language that would eventually become section 165(h)(5)(E) was then introduced as part of the Tax Reform Act of 1986, H.R. 3838, 99th Cong. (Dec. 3, 1985).

*Id.* Turning to the new provision, it explained that "[u]nder the bill, a taxpayer is not permitted to deduct a casualty loss for damages to property . . . unless the taxpayer files a timely insurance claim with respect to damages to that property." *Id.* The Conference Committee included this House provision in the bill that ultimately passed the Congress, with that committee's report using language similar to that in the House Report to explain the reason for the provision and how it operates. *See* H.R.Rep. No. 99–841, at II–342 (1986) (Conf. Rep.).

Invoking this legislative history, defendant argues that plaintiffs failed to file a timely insurance claim under section 165(h)(5)(E) because they made a "personal decision" not to file the "proof of loss" on a timely basis. But, the statute, of course, does not use either of the quoted phrases. Nor does it define what is meant by the phrase it actually employs—"files a timely insurance claim." And thus it remains to be seen whether Congress intended to include within the concept of an "insurance claim" the necessity of providing timely proof of that claim, if required by a policy, as defendant would have this court conclude.

 In construing the statute, the court must first look to whether its language is plain and ambiguous. *See United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In performing this task, it is guided by certain principles of interpretation.[13] The first, a "fundamental canon of statutory construction," is that, "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). The second, in many ways a corollary of the first, is

that a statute should be construed so that each part is given effect and no part is rendered inoperative or superfluous. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979). The third is that "where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Field v. Mans,* 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (internal citations omitted).[14] Lastly, yet another rule of interpretation potentially applicable here is that "[tax] deductions are strictly construed and allowed only 'as there is a clear provision therefor.'" *INDOPCO, Inc. v. Comm'r of Internal Revenue,* 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992) (quoting *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934)). Yet, despite this canon, it has been observed that even if "not supported by express statutory language," a loss deduction under section 165 "can nonetheless be recognized if it is 'in harmony with the statute as an organic whole.'" *Centex Corp. v. United States,* 395 F.3d 1283, 1295 (Fed.Cir.2005) (quoting *United States v. Foster Lumber Co.,* 429 U.S. 32, 42, 97 S.Ct. 204, 50 L.Ed.2d 199 (1976)) (quoting *Lewyt Corp. v. Comm'r of Internal Revenue,* 349 U.S. 237, 240, 75 S.Ct. 736, 99 L.Ed. 1029 (1955)).

 For many reasons, section 165(h)(5)(E) will not bear defendant's interpretation. The key phrase in that statute, "files a timely insurance claim," takes its meaning from its individual terms. Familiar lexicons mark the way, in this regard. Thus, Webster's defines the phrase "file" in relevant part, as "to deliver . . . after complying with any condition precedent . . . to the proper officer for keeping on file or among the

---

**13.** *See N.L.R.B. v. United Food & Commercial Workers Union, Local 23,* 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987) ("On a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.'").

**14.** *See also United States v. Shabani,* 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (stating that it is a settled principal of statutory

construction that "absent contrary indications, Congress intends to adopt the common law definition of statutory terms"); 2B Norman J. Singer, Sutherland Statutory Construction § 50.4 (7th ed. 2012) (noting the "utility to examine a federal statute with reference to the common law of the various states as it existed at the time the statute was enacted").

records of his office." *Webster's Third New International Dictionary* 849 (unabr. ed. 2002); *see also American Heritage Dictionary* 658 (4th ed. 2000) (to "file" is to "make application; apply"). The same lexicon defines a "claim" as a "demand for compensation, benefits or payment," using as an example thereof "one made under an insurance policy." *Webster's Third New International Dictionary,* at 414; *see also American Heritage Dictionary,* at 341 (a "claim" is a "demand for something as rightful or due;" "a demand for payment in accordance with an insurance policy or other formal arrangement"). These and like definitions, which have formed the *ratio dicendi* in many cases,[15] strongly suggest a distinction between the filing of a claim, *i.e.* the "deliver[y] ... to the proper officer" of a "demand for something due or believed to be due" and the subsequent submission of proof of the validity of that claim. *See General Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 845 F.Supp.2d 975, 977–78 (D.Minn.2012) ("claim" under state statute authorizing prejudgment interest required only "demand for payment" and not details "specific enough to permit the liable party to evaluate and quantify its liability").

This distinction proved pivotal in several cases construing the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91–173, 83 Stat. 792 (1969) (the 1969 Act)—a statute that, like section 165(h)(5)(E), conditioned the availability of certain benefits on the timely filing of a claim. In *Paluso v. Mathews,* 573 F.2d 4 (10th Cir.1978), the Tenth Circuit considered whether two coal miners were eligible for the disability benefits available under Title IV of the original 1969 Act, or instead were subject to the limitations on those benefits passed as part of the Black Lung Benefits Act of 1972, Pub. L. No. 92–303, 86 Stat. 153 (1972). That depended upon whether the miners had "filed" their "claim" prior to June 30, 1973, the effective date of the amendments. *See* 30 U.S.C. § 924(a)(1) & (b) (1972). The Secretary of Health, Education and Welfare (HEW) argued that " 'to file' should be construed as meaning 'to effectively file,' " 573 F.2d at 9, a construction that, in his view, required the claimants to provide not only a bare claim, but proof of their eligibility, both prior to the effective date. The Tenth Circuit, however, "reject[ed] HEW's specialized definition of 'file,' relying on the well-known legal aphorism that words in a statute are to be given their ordinary and plain meaning unless there is a clear congressional intent to the contrary." *Id.* Citing the dictionary definition of the word "file" (*e.g.,* "to enter an official record or to apply for, *id.*), the court held that "inasmuch as [the miners] submitted their claims prior to June 30, 1973, they are deemed to have 'filed' for Part B benefits and are eligible to be judged under the interim standards." *Id.* In so concluding, the Tenth Circuit joined other circuits that likewise held that the effective date provision was met by the timely filing of a basic claim. *See id.* (citing *Talley v. Mathews,* 550 F.2d 911 (4th Cir.1977); *see also Armstrong v. Califano,* 599 F.2d 1282, 1284–85 (3d Cir. 1979)) (miners were only required to file their claim by June 30, 1973; proof of the

---

**15.** For judicial applications of the above definition of the word "file," *see: Moultrie Intern., Inc. v. Universal Underwriters Ins. Co.,* 545 F.2d 543, 546 (5th Cir.1977); *GRK Fasteners, Ltd. v. Bennett,* 2004 WL 2260600, at *4 (D.Or. Oct. 5, 2004); *Alliant Techsystems v. United States,* 178 F.3d 1260, 1265 (Fed.Cir.1999); *Herald Ass'n, Inc. v. Judicial Conduct Bd.,* 149 Vt. 233, 544 A.2d 596, 602 (1988); *Reilly–Benton Co., Inc. v. Liberty Mut. Ins. Co.,* 278 So.2d 24, 28 (La.1973); *Narramore v. Fannin's Gas & Equipment Co.,* 80 Ariz. 115, 293 P.2d 671, 673 (1956); *Gage v. Jordan,* 23 Cal.2d 794, 147 P.2d 387, 393 (1944); *Town of Fairfield v. Fleisher,* 13 Conn.Supp. 62 (Conn.Super.1944); *see also United States v. Lombardo,* 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916). For judicial applications of the above definition of the word "claim," *see:* *Estate of Rubinstein v. United States,* 96 Fed.Cl. 640, 652 (2011); *Flint Hills Resources L.P. v. Lovegreen Turbine Servs., Inc.,* 2008 WL 4527816, at *9 (D.Minn. Sept. 29, 2008); *In re Diet Drugs,* 2003 WL 21641957, at *6 (E.D.Pa. March 12, 2003); *Richardson Electronics, Ltd. v. Federal Ins. Co.,* 120 F.Supp.2d 698, 700–01 (N.D.Ill. 2000); *Dana Corp. v. Fireman's Fund Ins. Co.,* 1997 WL 135595, at *7 (N.D.Oh. March 11, 1997); *Thomas v. Progressive Cas. Ins. Co.,* 749 N.W.2d 678, 684 (Iowa 2008); *Fireman's Fund Ins. Co. v. AIG Hawaii Ins. Co., Inc.,* 109 Hawai'i 343, 126 P.3d 386, 400 (2006). As many of these cases demonstrate, the word "claim" "has no different usage in the insurance industry." *Central Ill. Pub. Serv. Co. v. Am. Empire Surplus,* 267 Ill.App.3d 1043, 204 Ill.Dec. 822, 642 N.E.2d 723, 725–26 (1994).

claim could include evidence obtained at a later date); *Talley v. Mathews*, 550 F.2d at 917 ("We read 'file' as meaning no more than the submission of claim papers to the Social Security Administration . . .").

These case are instructive, as they show that, in ordinary parlance, requiring an insured-taxpayer to "file" a timely "claim" does not mean that he must file with his insurer anything more than what qualifies, under his policy, as a basic demand for compensation. In an effort to avoid that ineluctable result, defendant attempts to graft onto the concept of what is an insurance "claim" all of the conditions on recovery found in a given policy. But, there is no callus bridge between the scion of that position and the stock of the statutory language. Certainly that bridge does not come from the language of the policy in question, which plainly distinguishes between the initial claim ("give prompt notice to us or our agent") and the subsequent sworn proof of loss (the sixty-day requirement). That distinction was consistently observed by Farm Family, all of whose records treat the "prompt notice" that plaintiffs provided the company four hours after the fire as a "claim" and none of which conflate, as defendant does, that claim with the untimely "proof of loss." And this is not surprising, as the same distinction is found in New York law.[16] Try as it might, defendant can point to nothing in the statute, the regulations, the policy itself, or anything else that suggests, in the slightest, that this court ought to adopt a definition of the term "claim" that is at odds with its natural meaning. As against the statutory language, defendant is left to cherry pick phrases from the statute's legislative history, *e.g.*, that the deduction should be disallowed if the loss resulted from a "personal decision." But, a complete reading of that history tells a different story, indicating only that Congress intended to overrule cases like *Miller* and *Hills*, in which no insurance claim whatsoever was filed. Nothing in the legislative history suggests that Congress intended the statute to go further, and to reach a situation like this, in which the taxpayer timely filed a claim and then unsuccessfully pursued its insurance company in an effort to collect on that claim.[17] At the least, this case is a far cry from the rare instance in which the "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982); *see also Ron Pair*, 489 U.S. at 244, 109 S.Ct. 1026.

Indeed, defendant's own regulations appear to recognize what it refuses to concede here—that there is a distinction between the claim requirement in section 165(h)(5)(E) and the proof a policy might require as a precon-

**16.** Defendant argues that, under New York law, the "proof of loss" is essentially part of a valid claim. It cites in this regard, New York Insurance Law § 3407(a), which provides:

> The failure of any person insured against loss or damage to property under any contract of insurance . . . to furnish proofs of loss to the insurer or insurers as specified in such contract shall not invalidate or diminish any claim of such person insured under such contract, unless such insurer or insurers shall, after such loss or damage, give to such insured a written notice that it or they desire proofs of loss to be furnished by such insured or insurer or insurers on a suitable blank form or forms.

But, this law, if anything, helps plaintiffs, for it distinguishes between the "claim" of the insured and the "proofs of loss." *See also* N.Y. Ins. L. § 3407(b) (describing the sufficiency of a notice of loss). While defendant cites numerous cases indicating that compliance with the "proof of loss" requirement is a "condition precedent to recovery" under the policy, *see, e.g., Harris v. Allstate Ins. Co.*, 83 F.Supp.2d 423, 428–29

(S.D.N.Y.2000), none of these cases purports to merge the concept of what is a "claim" with what is "proof" of that claim, so as to make the latter an essential component of the former. Indeed, the numerous cases involving this provision appear to observe the distinction between the initial filing of a claim and the subsequent provision of proof of loss. *See e.g., Pioneer Ins. Co. v. Deleo*, 167 A.D.2d 795, 797, 563 N.Y.S.2d 356 (N.Y.App.Div.1990) ("There is [ ]no merit in defendant's argument that plaintiff's investigation of the loss claim waived its right to a proof of loss statement."); *see also* 16 R. Lord, *Williston on Contracts* § 49:110 (4th ed. 2012) ("The proof of loss requirement is distinct from provision requiring that the insured notify the insurer of an accident, occurrence or loss") (citing cases).

**17.** To the extent it is debatable whether a taxpayer could file a putative claim with his insurer, with no intention of pursuing the matter, allow the claim to languish and then still qualify for a deduction under section 165(c), it is sufficient to point out that is not this case.

dition to recovery. Section 1.165–1(a) of the regulations, for example, states that a deduction shall be allowed for "any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation." Yet, under defendant's broad construction of section 165(h)(5)(E), it is irrelevant whether an insured actually was "made good" by insurance. Even more telling is section 1.165–1(d)(2)(i) of the regulations, which defines the year in which the loss deduction may be claimed. That regulation specifically alludes to a taxpayer's abandonment of a claim for reimbursement as marking the proper time for taking a deduction—

> If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to pro-

duce objective evidence of his having abandoned the claim, such as the execution of a release.

Treas. Reg. § 1.165–1(d)(2)(i).[18] This regulation is consistent with the most natural reading of the "timely claim" requirement—that a taxpayer's failure to obtain compensation on a claim timely filed with his insurer does not prevent him from eventually claiming a deduction, but merely affects the timing of that deduction. In arguing to the contrary, defendant cannot explain how a loss deduction becomes fixed under this regulation upon the "abandonment" of the claim, if that same "abandonment" *per force,* serves to trigger the disallowance provision in section 165(h)(5)(E). In the end, then, the court can accept defendant's one-word-two-meanings argument only if it is willing to shred a fifty-year old Treasury Regulation—something it will not do. *See Sharkey v. Quarantillo,* 541 F.3d 75, 93 (2d Cir.2008) (rejecting an argument that would render regulations "nullities"); *Sec'y of Labor v. Twentymile Coal Co.,* 411 F.3d 256, 261 (D.C.Cir.2005) (interpretation is "particularly untenable because it would render the pertinent regulation a nullity").[19]

Nor are defendant's somewhat fuzzy policy arguments any more compelling. The court must decline defendant's blithe invitation to engage in a bit of statutory *joie de revision*— "minting an eligibility requirement that has no antecedent in the statute's language." *Nat'l Data Corp. & Subs. v. United States,* 50 Fed.Cl. 24, 34 (2001). This would be true even if defendant offered a compelling case for what must be viewed as a rewrite of the relevant provision, for as the Seventh Circuit

18. These same regulations go on to state that "[i]f in the year of the casualty or other event a portion of the loss is not covered by a claim for reimbursement with respect to which there is a reasonable prospect of recovery, then such portion of the loss is sustained during the taxable year in which the casualty or other events occurs." Treas. Reg. § 1.165–1(d)(2)(ii).

19. The notion that a "claim" must include proof of the facts asserted therein is belied by how the IRS has construed that same term in the context of provisions like section 6511(a) and 7422(a) of the Code. Section 7422(a) bars the initiation of a refund suit "until a claim for refund or credit has been duly filed with the Secretary" within

the time period prescribed by section 6511(a). 26 U.S.C. §§ 6511(a), 7422(a). The regulations under these provisions make clear that this "claim" need not include proof of the matters asserted therein. Rather, they provide that "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof," together with a declaration indicating that the claim is "made under the penalties of perjury." Treas. Reg. § 301.6402–2(b)(1). Accordingly, in this context, the IRS has construed the term "claim" consistent with its ordinary meaning.

once said, there is "no room for the exercise of judicial discretion in the construction of Section 165(a)." *Int'l Trading Co. v. Comm'r of Internal Revenue*, 484 F.2d 707, 712 (7th Cir.1973); *see also Campbell v. Comm'r of Internal Revenue*, 54 T.C.M. (CCH) 632, (1987). In fact, though, defendant's has not offered much of a case in this regard at all. It is hardly clear why this court should read requirements into the statute that would broaden the gulf that already exists between the tax treatment of individuals who fail to purchase casualty insurance at all (whose nonbusiness losses are fully deductible under section 165(a)) and those who purchase such insurance but are ultimately unsuccessful, for whatever reason, in pursuing a timely-filed insurance claim.[20] Were the court to do this, it would sweep into the calculus for determining whether a casualty loss is deductible a wide range of disputes between an insured and his insurer—questions about whether a policy was in effect, what was covered and to what extent, whether the policy's terms and conditions were satisfied, and the effect of state law on the same.[21] While Congress dipped its toe into these waters in requiring courts to decide whether an insurance claim was timely filed, there is not the slightest hint that it intended either the IRS or the courts to wade into the morass of issues that would inevitably arise if the availability of a casualty loss hinged on whether an insured-taxpayer had done everything it was required to do to perfect an insurance claim.[22] If these "changes in the law are desirable, ... Congress must make them." *United States v. Olympic Radio & Television, Inc.*, 349 U.S. 232, 236, 75 S.Ct. 733, 99 L.Ed. 1024 (1955); *see also LaBelle Iron Works v. United States*, 256 U.S. 377, 393–94, 41 S.Ct. 528, 65 L.Ed. 998 (1921).

To summarize, defendant's position crashes headlong into the plain language of the statute, which forecloses its construction of section 165(h)(5)(E). Not surprisingly, defendant has cited no case to the contrary. Applying the statute in accordance with its actual terms—as this court is ought to do—there is little doubt that, with respect to the loss in question, plaintiffs "file[d] a timely insurance claim." Which is to say that section 165(h)(5)(E) does not bar plaintiffs from receiving the deduction in question under section 165 of the Code.[23]

## III. CONCLUSION

In its briefs, defendant describes this case as one of "first impression." And, truly, it is. An informed observer might find this surprising. Why, they might ask, did it take the IRS twenty-five years to happen upon a taxpayer claiming a casualty loss who had lost a

**20.** *See* Richard Posner, Economic Analysis of Law 378 (2d ed. 1977) ("As for the casualty-loss deduction, its effect is not so much to compensate people whose well-being has been impaired as to compensate people who have lacked the foresight to insure."). Of course, if defendant were successful in obtaining a result here that is untethered to the statute's language, nothing would prevent it from arguing in the next case that a casualty loss suffered by an uninsured taxpayer was attributable to the taxpayer's "personal decision" to forego insurance coverage and thus be nondeductible, as well.

**21.** Such an analysis proved unnecessary here only because plaintiffs first aggressively pursued their claims against their insurer in state court—hardly an indication, by the way, that they should be viewed as having willingly foregone their insurance claim in favor of receiving a casualty loss deduction. If the state court had not acted first, then, under defendant's view, it would have been for this court to resolve issues such as when plaintiffs first received the request for proof of loss so as to trigger the timing provision in the policy. And that, of course, is but one example of the host of legal and factual issues that would

arise if every taxpayer claiming a casualty loss was obliged to demonstrate that he had done everything possible to collect under an applicable insurance policy.

**22.** Nor is there any indication that Congress intended to treat otherwise similarly-situated taxpayers, each timely filing insurance claims, differently depending upon what their respective policies or insurers demanded in the way of proof. In this regard, it should not be overlooked that if Farm Family had not requested the "proof of loss" under the policy in question, plaintiffs would not have been required to file that document and defendant would have no argument that plaintiffs failed to meet the requirements of section 165(h)(5)(E).

**23.** This is not to say, of course, that plaintiffs' loss deduction will ultimately be allowed. *Inter alia,* issues remain concerning the source of the fire in question. *See Blackman v. Comm'r of Internal Revenue*, 88 T.C. 677 (1987), *aff'd,* 867 F.2d 605 (1st Cir.1988).

dispute with his insurer over whether he had timely provided proof of a claim? As it turns out, not-so-subtle hints as to why it took so long for such a case to develop are supplied by the relevant statutory language, the common usage of the terms employed therein, the IRS' own regulations and even the statute's legislative history, all of which suggest that the more perplexing question here is not why this issue came up so late, but why it came at all?

Based on the foregoing, the court hereby **DENIES, IN PART,** and **GRANTS, IN PART,** defendant's motion to dismiss under

RCFC 12(b)(6).[24] On or before August 31, 2012, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule for further proceedings, as appropriate.

**IT IS SO ORDERED.**

---

**24.** To be clear, the court grants only that part of defendant's motion that seeks dismissal of that portion of plaintiffs' complaint seeking the refund of state taxes paid.