JAMES R. WEAVER AND LORRAINE C. WEAVER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weaver v. Commissioner
Docket No. 5184-82.
United States Tax Court
T.C. Memo 1984-634; 1984 Tax Ct. Memo LEXIS 44; 49 T.C.M. (CCH) 249; T.C.M. (RIA) 84634; December 5, 1984. Edward R. Joyce, for the petitioners. Michael J. Cooper, for the respondent. SHIELDS MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies of $2,291.00 and $2,250.00 in the income tax of petitioners for 1979 and 1980, respectively. After concessions, the following issues remain: (1) the amount, if any, the petitioners are entitled to deduct in 1979 and in 1980 for meals purchased while away from home overnight; (2) whether a *46 nonbusiness bad debt became worthless in 1979; (3) the amount, if any, which petitioners may claim in miscellaneous deductions for 1979; (4) whether $597.50 of medical expenses paid by petitioners in 1980 are deductible even though they failed to file a claim under an insurance policy covering such expenses; and (5) whether petitioners may deduct in 1980 under section 213, [1] $3,567.05 as insurance premiums paid for medical care. Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference. Petitioners, James R. Weaver (hereinafter referred to as petitioner) and Lorraine C. Weaver, husband and wife, resided in Florissant, Missouri, at the time they filed the petition in this case. Petitioners filed timely joint income tax returns for 1979 and 1980 with the Kansas City Internal Revenue Service Center. (1) Meal Expense
During *47 1979 and 1980, petitioner was employed as an over-the-road truck driver. As part of his job, he was away from home overnight for 67 days in 1979 and 89 days in 1980. His employer paid for his lodging expenses while away from home overnight but he paid for his own meals. As required by the Interstate Commerce Commission, petitioner maintained a daily log in which he entered with respect to each trip his destination, turn-around point, and the amount of time spent on and off duty. He kept no record of the time, place, and cost of any meal while away from home. On their returns, petitioners deducted $2,926 in 1979 and $3,393 in 1980 as employee business expenses. Petitioner testified that these figures represented his estimate of the cost of all of his meals while on the road including those eaten on "turn-around runs" which were made in one day without an overnight stay. He also testified that on overnight trips he averaged about $14.00 or $15.00 per day on meals and another $5.00 to $6.00 on coffee, sodas, and other incidentals. In this manner he estimated that he needed to take on each overnight trip about $20.00 for each day he expected to be gone. In the notice *48 of deficiency respondent disallowed the deductions for meals in their entirety. Petitioner has conceded that he is not entitled to deduct the cost of the meals consumed on the turn-around runs where he was not away from home overnight. With respect to the balance, the meals he consumed while away overnight, an employee may deduct ordinary and necessary expenses, including meals, if incurred in connection with his employment while away from home. Section 162. Initially the employee has the usual burden of proof with respect to such deductions. Rule 142(a). Under section 274(d), however, he is also required to substantiate any travel expense with records or with other evidence corroborating his own statement. In this case the daily logs kept by petitioner clearly establish the dates on which he was away from home overnight.In fact from the logs the perties have determined and stipulated that the number of such dates totaled 67 in 1979 and 89 in 1980. Petitioner, however, admittedly kept no record of the cost of the meals consumed on those dates. He merely estimated the cost *49 of such meals and was unable to produce any evidence documentary or otherwise to corroborate his testimony. Obviously petitioner incurred some meal expense while away from home but his uncorroborated testimony as to his estimated average daily expenditures for meals is not sufficient to satisfy the mandatory requirement of section 274(d). Stemkowski v. Commissioner,76 T.C. 252 (1981), affd. in part, revd. and remanded in part on other grounds 690 F.2d 40 (2d Cir. 1982). [2] Consequently, we are forced to sustain respondent's determination with respect to this issue. (2) Bad Debt Deduction
On their return for 1979, petitioners claimed a short-term capital loss of $22,023 for a nonbusiness bad debt on advances *50 made to the "Forget-Me-Not Restaurant." These advances by petitioner began in April of 1979 and continued into February of 1980. The restaurant, a truck stop operation, was located in Phillipsburg, Missouri. It was owned and operated in partnership form by Carolyn Hebblethwaite and Norma Kubley who are unrelated to petitioners. In September of 1979, Carolyn Hebblethwaite was advised by her attorney in the presence of petitioner to close the restaurant and to file for personal bankruptcy. Pursuant to this advice the restaurant was closed shortly thereafter but the bankruptcy proceeding [3] was not instituted until June 27, 1980. [4]
During 1979 the restaurant *51 was Norma Kubley's only source of income. Carolyn Hebblethwaite, however, earned $16,000 in 1978 and $17,000 in 1979 from another job. Respondent does not question the amount or the validity of the advances. He merely contends that the debt did not become worthless in 1979. A loss on a nonbusiness bad debt is deductible in the year in which it becomes totally worthless. Sec. 1.166-5(a)(2), Income Tax Regs.; Dustin v. Commissioner,53 T.C. 491, 501 (1969), affd. 467 F.2d 47 (9th Cir. 1972); Rule 142(a). [5] The burden of proof with respect to the year of worthlessness is on the petitioner. Rule 142(a). A debt becomes worthless when there is no longer any reasonable ground for believing that repayment with be made. Dallmeyer v. Commissioner,14 T.C. 1282, 1291-1292 (1950). The proof usually includes an identifiable event such as bankruptcy *52 which clearly demonstrates the total loss of value. Dustin v. Commissioner,supra.However, in final analysis, the issue must be determined from a consideration of all of the relevant evidence as to the financial condition of the debtor. Sec. 1.166-2(a), Income Tax Regs.; Riss v. Commissioner,478 F.2d 1160, 1166 (8th Cir. 1973); Dallmeyer v. Commissioner,supra.The debt is deemed totally worthless when there is no longer any reasonable ground for believing that any repayment will be made. Dallmeyer v. Commissioner,supra.In other words, the debt is worthless when it has lost its "last vestige of value." Bodzy v. Commissioner,321 F.2d 331, 335 (5th Cir. 1963). See also Estate of Mann v. Commissioner,731 F.2d 267 (5th Cir. 1984). Petitioners contend that in this case the debt became worthless in 1979 and that the event which identifies this as the year of worthlessness was the advice given Carolyn by her attorney in September of 1979 to close the restaurant and to place herself in bankruptcy. Respondent contends that the debt did *53 not become worthless prior to 1980. The identifiable event upon which he relies is the filing of the bankruptcy petition of Carolyn on June 27, 1980. In some cases bankruptcy may be the identifiable event which establishes that a debt has become entirely worthless. Dallmeyer v. Commissioner,supra. In other cases the debt may be worthless prior to bankruptcy. See Simon v. Commissioner,T.C. Memo. 1978-485. In the case before us, howevesr, we are not satisfied that the debt was entirely worthless before the end of 1979 because even though the restaurant was closed during 1979 the record contains evidence clearly establishing that Carolyn earned $17,000 during that year from another job and did not file her petition in bankruptcy until nine months later. Furthermore, the debt in question was a partnership liability on which the other partner, Norma Kubley, was equally liable. Mo. Ann. Stat. § 358.150 (Vernon 1968); Schneider v. Schneider,347 Mo. 102, 146 S.W.2d 584 (1940). *54 The record contains no evidence as to Norma's assets or general financial condition during 1979 or at any other time. There is evidence to the effect she had no source of income other than the restaurant but this has little if any bearing on her ability to pay the debt. The record contains other facts which also tend to weaken petitioner's position on this issue. For instance, (1) according to her bankruptcy petition, Carolyn was still able to make "payments on existing loans" during 1979; (2) petitioner continued to make the advances until February of 1980; and (3) petitioner testified that he had never requested repayment of the debt from either Carolyn or Norma. From all of the foregoing, we cannot conclude that the debt was totally worthless at the end of 1979. (3) Miscellaneous Expenses
On their 1979 return petitioners claimed miscellaneous deductions as follows: safe deposit box ($10.00), dues and subscriptions ($25.00), legal fees ($100.00), motels ($210.00) and mileage ($666.00). Petitioner testified that the expenditures for legal fees, motels, and mileage were all incurred in connection with the advances made to the Forget-Me-Not Restaurant. In *55 support of the deduction for legal fees he introduced a cancelled check for $100 dated in 1979 and made payable to Darryl Deputy the attorney who advised Carolyn to close the restaurant and place hereself in bankruptcy. With respect to the motel expenses, he introduced ten receipts from motels and credit cards which corroborated the claimed expenditures and the fact that they were made in 1979. As to the mileage he testified that the amount of the deduction was arrived at by using the total mileage of the ten trips which he made from his home to the restaurant for the purpose of checking on his advances to the restaurant. He also testified that the legal fees and the motel expenses were incurred for the same purpose. We find that with respect to these three items petitioners have satisfied the requirements of section 274(d). Since the respondent has conceded that they are deductible under section 212 if we find that they qualify under section 274(d) these deductions will be allowed. The record, however, contains no evidence with respect to the deductions claimed for the safe deposit box and the subsacriptions. Therefore, respondent's disallowance of these two deductions is sustained. *56 (4) Medical Expenses
During 1980, petitioner was covered by a medical insurance plan provided by his union and paid for by his employer. The plan covered the costs of x-rays, laboratory procedures, and relates charges by a doctor unless such costs were incurred as part of a routine physical examination. During 1980 petitioner incurred charges for doctor and laboratory services in the amount of $597.50 which unknown to him were covered by the plan.He paid these charges himself, claimed no reimbursement under the plan, but deducted them as medical expenses on the return for 1980. Respondent disallowed the deduction. Medical expenses which are "not compensated for by insurance or otherwise" are deductible under section 213(a). Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent stipulated that the medical expenses were paid but contends that petitioners have not met their burden of establishing that they were not reimbursed by insurance. He further contends that if petitioners did not file a claim *57 for an otherwise reimbursable medical expense they are not entitled to the deduction. Petitioner testified that he did not file a claim for reimbursement and that he has not been reimbursed for the expenses in issue.The record contains no evidence to the contrary and we found petitioner's testimony on this point to be credible. We conclude therefore that the expenses were paid in 1980 and were not reimbursed by insurance or otherwise. With respect to the more significant question of whether petitioner's failure to claim reimbursement precludes him from taking a deduction for the medical expenses, the parties have not cited and we have not found any direct authority under section 213. However, the language used in section 213 is identical to that used in section 165 where deductions for losses are limited to those "not compensated for by insurance or otherwise," and a deduction for a loss under section 165 is not precluded by the failure of the taxpayer to claim reimbursement under existing insurance. Hills v. Commissioner,691 F.2d 997 (11th Cir. 1982), affg. *58 76 T.C. 484 (1981); Miller v. Commissioner,733 F.2d 399 (6th Cir. 1984), affg. T.C. Memo. 1981-431. Respondent admits that the same rule should apply to deductions under both section 165 and section 213 where insurance is available but no claim for reimbursement is made. He contends, however, that the failure to claim reimbursement should bar the deduction under the holding in Kentucky Utilities Company v. Glenn,394 F.2d 631 (6th Cir. 1968). He reliance on Kentucky Utilities Company v. Glenn,supra, is misplaced, however, because that case was reversed on this point in Miller v. Commissioner,supra.
In both Hills and Miller, texpayers were found to be entitled to the casualty loss deductions under section 165 even though they failed to file claims under insurance policies covering the losses. The restriction against deducting the losses under section 165 was thus tied to the actual receipt of compensation. In other words if compensation is received, the deduction is not allowable, but if compensation is not received, the loss is allowable. As stated *59 in Hills v. Commissioner,supra,691 F.2d at 1006: Motivations, reasons and explanations cannot change the verbiage of the Code and its regulations. The only fact relevant to the decision in this case is whether or not the taxpayer who claims a casualty loss was compensated for his loss. There is no hint in the statute or the Code regarding the function of motivations and purposes in not taking the insurance compensation. The only words in the statute that speak to deductibility inquire whether or not the loss has been compensated. The answer to this inquiry is that this taxpayer was not compensated. The Code looks simply to whether he received or did not receive compensation for his loss. In Hills v. Commissioner,supra, the Circuit Court also held that the phrase "compensated for by insurance" in the context of section 165 should take its everyday meaning of being "reimbursed" and should not be equated with "covered by insurance." We are unable *60 to find anything in the statute or legislative history of section 213 which requires a different interpretation of the same phrase as used in section 165. Respondent next contends that under section 213, Congress did not intend to provide for a double tax benefit, i.e., the deduction of out-of-pocket medical costs and the simultaneous deduction of medical insurance premiums. [6] This same contention was made and specifically rejected in Miller v. Commissioner,supra, where the Court held that it did not "necessarily agree that it results in a windfall or 'double-dip' to allow businesses to deductboth insurance premiums and § 165 losses." 733 F.2d at 402 n.6. The Court felt that because of the unique nature and necessity of insurance, businesses often cannot utilize their insurance for fear of cancellation, increased rates, or otherwise. Respondent finally urges us to analogize the present case to the situation where an employee's deduction *61 under section 162 for "ordinary and necessary" business expenses is denied because he failed to claim reimbursement from his employer. [7] This we cannot do because the pivotal language of "compensated for by insurance or otherwise" does not appear in section 162. We conclude therefore that the reasoning used in Hills and Miller with respect to losses under section 165 is equally applicable to medical expenses under section 213 and consequently the out-of-pocket medical, expenses paid by petitioners are deductible even though they failed to seek reimbursement of such expenses from their insurance. (5) Insurance Premiums
The parties have stipulated that during 1980 petitioners made payments to insurance companies in the amounts shown below: Name of Company
Amount
Blue Cross
$2,036.00
Penn Life
380.00
Mutual of Omaha
385.00
United Catholic Group
766.05
TOTAL
$3,567.05
Petitioners contend that all of the above payments are deductible as medical expenses under section 213. Respondent contends that petitioners have failed to establish that the *62 payments made to Blue Cross were for medical insurance or to provide medical care to petitioners or their dependents as required by section 213. With respect to all of the other payments respondent contends that they do not constitute payments for medical insurance under section 213(d). With respect to the payments made to Blue Cross the record in this case does not contain a policy or any other evidence as to why the stipulated payments were made. Consequently petitioners have failed to carry their burden of establishing that such payments were made to provide medical care for them or a dependent of theirs. The record also does not contain a policy or any other evidence as to why the stipulated payments to Penn Life were made. The record does contain a certificate issued by the Beneficial National Life Insurance Company on November 13, 1979 which certifies that petitioner, James R. Weaver, was then insured under group policy 1001-085. The certificate indicates that the group policy provided (1) certain cash benefits to the insured and his eligible dependents for hospital confinements and (2) cash benefits for accidential death or dismemberment. Although the record *63 is insufficient to permit us to so find, it is conceivable that Beneficial National Life was the company to which petitioners made the payments totaling $380.00 and that the parties mistakenly stipulated that the payments were made to Penn Life. In any event we are unable to find from this record the amount, if any, of the payment which represented medical care as opposed to the accidential loss of life or limb. In fact we are unable to determine that the group policy was even in effect during 1980. The record also contains a copy of the policy issued by Mutual of Omaha to James R. Weaver on which the stipulated payments of $385 were made in 1980. This policy provides certain medical benefits as well as cash payments in the event of accidental death, dismemberment or loss of sight. Neither the policy nor any other evidence in the record constitute a basis for allocating the payments made in 1980 between the medical and the non-medical benefits provided by the policy. The stipulated payments totaling $766.05 made to the United Catholic Group covered two policies. The first is policy number 4345-34 issued by Union Fidelity Life Insurance Company through the group to petitioners *64 and provided each of them with certain hospital, surgical, nursing, and other medical benefits in case they became "afflicted with cancer." The policy provided no benefits with respect to any disease or injury other than cancer. From the record we are unable to determine the portion of the total payments made to the United Catholic Group of $766.05 which represents the premiums on this policy or the portion which represents premiums on the other policy in the same group which is discussed below. The second policy, number 5380-34, was also issued through the United Catholic Group by Union Fidelity and provided both petitioners with hospital benefits. The policy, however, included a rider under which cash benefits were payable to either petitioner in case of dismemberment or loss of sight. Here again, neither the policy nor any other evidence in the record can be used to determine the amount of the payment which is allocable to the medical benefits as opposed to the loss of limb or sight. That portion of an insurance contract which provides indemnity against the loss of income, *65 life, limb or sight, is not considered as insurance for medical care and hence the cost thereof is not deductible as a medical expense under section 213. H. Rept. No. 213, 89th Cong., 1st Sess. 178 (1965), 1965-2 C.B. 733, 745. If the insurance contract provides for both medical and non-medical care, then "no amount shall be treated as paid for [medical care] insurance * * * unless the charge for such insurance is either separately stated in the contract, or furnished to the policyholder by the insurance company in a separate statement." Section 213(e)(2)(A). [8]
Under section 213(a) a deduction is allowed for expenditures made "for medical care of the taxpayer, his spouse, or a dependent." The term "medical care" includes amounts paid for insurance providing medical care. Section 213(d). The burden of proof with respect to any deduction for medical care under section 213 is on the taxpayer. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). In view of the foregoing, *66 we conclude from this record that petitioners have failed to carry their burden of proving what amount, if any, of the $3,567.05 which they paid to the insurance companies in 1980 represented payments for medical care. We are unable, therefore, to allow any part of such payments as a medical deduction under section 213. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. In reaching this conclusion we are aware of the fact that if the expenses had been incurred after December 31, 1982, petitioners could have elected an optional method of computing deductible meal expenses under Rev. Proc. 83-71, 1983-2 C.B. 590↩. The optional method, however, was not available during the years before us.
3. The bankruptcy proceeding involved only Carolyn Hebblethwaite and not Norma Kubley or the partnership. ↩
4. While the stipulation of facts states that the filing took place on June 27, 1979, all other evidence, including the bankruptcy petition, indicates that June 27, 1980 is the correct date of filing. However, neither party has questioned the variance and in any event we are not bound by a stipulation which is clearly erroneous. Jasionowski v; Commissioner,66 T.C. 312, 318↩ (1976).
5. See Simon v. Commissioner,T.C. Memo. 1978-485↩.
6. Although Mr. Weaver did not claim a deduction for insurance premiums, a double tax benefit does exist in the fact that Mr. Weaver's employer paid and presumably deducted the insurance premiums.↩
7. See Heidt v. Commissioner,274 F.2d 25↩ (7th Cir. 1959).
8. See Tratner v. Commissioner,T.C. Memo. 1974-8↩.