# United States Tax Court

T.C. Memo. 2025-2

ISHVEEN K. CHOPRA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 619-23.                                 Filed January 8, 2025.

————————

Ishveen K. Chopra, pro se.

*Ka* (*Matt*) *Tam* and *Stephen C. Welker*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2019, the Internal Revenue Service (IRS or respondent) determined a deficiency of $30,520 and a civil fraud penalty of $22,890 under section 6663(a).[1] The deficiency is attributable to disallowed itemized and business expense deductions claimed by petitioner. We will sustain the deficiency and the fraud penalty in full.

## FINDINGS OF FACT

These findings are derived from the parties' Pleadings and Motion papers, a Stipulation of Facts with attached Exhibits admitted into evidence under Rule 91(f), and the documents and testimony admitted into

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2] evidence at trial. Petitioner resided in Maryland when the Petition was timely filed.

Petitioner is a healthcare consultant with multiple academic degrees, chiefly in the field of life sciences. These include an M.S. and a Ph.D. During 2019 she was employed by Kelly Services Global and International Business Machines. Her employers furnished the IRS with Forms W–2, Wage and Tax Statement, reporting total wages of $188,015 from these positions.

During 2019 petitioner allegedly provided additional consulting services in a nonemployee capacity, likewise in the fields of health care and life sciences. She reported the expenses she allegedly incurred in this consulting activity on Schedule C, Profit or Loss From Business, listing herself as the sole proprietor. She separately reported on Schedule E, Supplemental Income and Loss, her participation in an alleged partnership, Manticore Consultancy (Manticore), in which she was supposedly a 50% partner.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2019. On this return she reported wages of $188,015, as shown on the Forms W–2 issued to her. She reported aggregate losses from her alleged nonemployee consulting of −$94,216, itemized deductions of $71,924, and taxable income of $22,116. She reported a total tax liability of $2,461 and claimed a refund of $27,849.

On Schedule A, Itemized Deductions, petitioner reported medical expenses of $68,977 and state taxes of $27,200, yielding deductions (after applicable limitations) of $61,924 and $10,000, respectively. On Schedule E she reported −$4,388 as her distributive share of a nonpassive loss from Manticore. On Schedule C she reported gross receipts of zero from her alleged consulting activity and total expenses of $89,828, as follows:

| Item | Expense |
|------|---------|
| Advertising | $1,479 |
| Car/Truck | 13,309 |
| Depreciation/179 | 24,941 |
| Insurance | 2,758 |

[*3]

| | |
|---|---|
| Legal/Professional Services | 31,196 |
| Office Expense | 1,860 |
| Travel | 8,688 |
| Utilities | 5,597 |
| **Total** | **$89,828** |

The IRS selected petitioner's 2019 return for examination and assigned the case to a team that included Revenue Agent (RA) Gary Libbin. At all relevant times, RA Libbin's immediate supervisor was Supervisory Revenue Agent Ashley Gunn. RA Libbin requested documentation from petitioner to substantiate the deductions on her 2019 return.

In response petitioner provided credit card statements for five nonconsecutive months of 2019. One group of statements showed alleged transactions on an American Express (AmEx) account ending in 15008; the other showed alleged transactions on a Discover Bank (Discover) account ending in 4260. The RA noticed inconsistencies in these statements, which prompted him to issue a summons to Discover. Discover supplied the IRS with information about all Discover accounts in petitioner's name for 2019. They did not include any account ending in 4260.

To substantiate her claimed business expense deductions petitioner supplied RA Libbin with various documents, including alleged hotel receipts and invoices for purchases of equipment. Several of these documents appeared altered or suspicious. Hotel receipts misspelled the hotel's name and had unusually late checkout times (such as 11:10 p.m.). Several receipts showed billings to the nonexistent Discover account.

To substantiate her claimed deduction for legal/professional services of $31,196, petitioner submitted alleged invoices of $18,718 and $12,478 from the Chen Law Firm. In response to RA Libbin's request for information, that firm stated that it had no billing information for 2019 that matched these purported invoices. However, the firm did provide RA Libbin with information about payments petitioner had made to the firm during 2017 and 2018.

To substantiate her reported medical expenses of $68,977, petitioner submitted a purported invoice from her insurer, United

[*4] Healthcare. That document stated that United Healthcare declined to cover any portion of the cost of treatment petitioner allegedly received for acute appendicitis in 2019 at Johns Hopkins Suburban Hospital (Johns Hopkins). Noticing inconsistencies within the invoice, RA Libbin asked Johns Hopkins for billing records relating to petitioner. Johns Hopkins responded that it possessed no record of any treatment or billing relating to petitioner for 2019.

RA Libbin concluded that the substantiation petitioner provided was fraudulent and prepared a Civil Penalty Approval Form. On that form he recommended that the IRS assert against petitioner a civil fraud penalty under section 6663 or (in the alternative) an accuracy-related penalty under section 6662(d). RA Libbin forwarded the case file to Ms. Gunn for approval. On June 9, 2022, she approved RA Libbin's initial determinations by signing the Civil Penalty Approval Form.

On October 27, 2022, the IRS issued petitioner a Notice of Deficiency (Notice) for 2019. The Notice disallowed the medical expense deduction in its entirety for lack of substantiation. Because the other itemized deduction petitioner had claimed—$10,000 for state and local taxes—was less than the standard deduction ($12,200), the Notice allowed a standard deduction and disallowed the $10,000 deduction as a computational adjustment. Finally, the Notice disallowed for lack of substantiation $79,613 of the deductions claimed on Schedule C (specifically, the deductions for advertising, car/truck, travel, depreciation, and legal/professional services).

Petitioner timely petitioned this Court, proceeding pro se. She was uncooperative with respondent's counsel in preparing the case for trial, declining to respond to all IRS attempts at communication. On February 27, 2024, respondent filed a Motion to Compel Production of Documents, representing that petitioner had failed to produce AmEx and Discover statements for the remaining 7 months of 2019 and had refused to produce any tax returns or documents regarding Manticore. By Order served February 28, 2024, we granted respondent's Motion, warning petitioner that, if she did not adequately comply, we would consider imposing sanctions under Rule 104.

On April 5, 2024, respondent filed a Motion to Impose Sanctions. He represented that petitioner had supplied, in response to our Order, no additional financial records beyond those she had previously provided—i.e., 5 months of alleged AmEx and Discover credit card statements—and that she declined to supply copies of Manticore's 2019 tax

[*5] return, reimbursement policy, or partnership agreement. Respondent accordingly requested that we impose appropriate sanctions.

In response to the Motion petitioner asserted that financial records other than the 5 months of Discover and AmEx statements "hav[e] no connection with the 2019 tax-related claimed amounts" and were "irrelevant and immaterial." She asserted that the Manticore tax return and partnership agreement "are Company confidential and thus are irrelevant and immaterial to this case."

Having heard argument on the Motion to Impose Sanctions at the start of trial, we overruled petitioner's relevancy objections. We ruled that she would be precluded from entering into evidence at trial any documents that she should have made available, but did not make available, to respondent's counsel as directed in our February 28, 2024, Order. And we indicated that we might draw negative inferences from her nonproduction of the requested material.

## OPINION

### I.    *Burden of Proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. *See* Rule 142(a). The Commissioner bears the burden of proof regarding fraud, and he must establish fraud by clear and convincing evidence. *See infra* pp. 12–13. Section 7491(a) provides that the burden of proof may shift to the Commissioner on a factual issue if (among other requirements) the taxpayer "introduces credible evidence with respect to [that] issue" and "has maintained all records required under this title." *See* § 7491(a)(1), (2)(B). Petitioner does not contend, and she could not plausibly contend, that she meets these requirements.

### II.    *Governing Legal Standards*

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer must show that she has met all requirements for each deduction and must keep books or records that substantiate expenses underlying it. § 6001; *Roberts v. Commissioner*, 62 T.C. 834, 836 (1974). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. *Rogers v. Commissioner*, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

[*6]   Section 162(a) allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Whether an expenditure is "ordinary and necessary" is generally a question of fact. *Commissioner v. Heininger*, 320 U.S. 467, 475 (1943). An expenditure is "necessary" if it is "directly connected with" and "appropriate and helpful" to the taxpayer's business. *Welch v. Helvering*, 290 U.S. 111, 113 (1933); Treas. Reg. § 1.162-1(a).

Section 274(d) sets forth heightened substantiation requirements for certain types of expenses. As in effect during 2019, section 274(d) made these strict requirements applicable for "any traveling expense (including meals and lodging while away from home)" and "any listed property." "Listed property" was defined to include "any passenger automobile." § 280F(d)(4)(A)(i); Treas. Reg. § 1.280F-6(b)(1)(i). With respect to travel expenses and listed property, section 274(d) provided that no deduction shall be allowed "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the amount of the expense, the time and place of the travel, and "the business purpose of the expense or other item." *See* Temp. Treas. Reg. § 1.274-5T(c).

For expenses governed by section 274(d), "[w]ritten evidence has considerably more probative value than oral evidence," and "the probative value of written evidence is greater the closer in time it relates to the expenditure." Temp. Treas. Reg. § 1.274-5T(c)(1). Substantiation by "adequate records" generally requires the taxpayer to "maintain an account book, diary, log, statement of expense, trip sheets, or similar record," as well as evidence documenting the expenditures. *Id.* subpara. (2). To substantiate business use of vehicles an actual contemporaneous log is not strictly required, but records made at or near the time of the expenditure have greater probative value than records created subsequently. *Id.* subparas. (1) and (2).

III.   *Itemized Deductions*

For 2019 petitioner reported unreimbursed medical expenses of $68,977, yielding a deduction of $61,924 after the applicable limitation. *See* § 213(a), (f) (allowing a deduction for medical expenses, not compensated by insurance or otherwise, to the extent such expenses exceed 7.5% of the taxpayer's adjusted gross income). Petitioner bears the burden of proving that she paid medical expenses and that they were not reimbursed. *See Weaver v. Commissioner*, T.C. Memo. 1984-634, 49 T.C.M. (CCH) 249, 251–52.

[*7] Petitioner asserts that she paid $68,977 to Johns Hopkins for treatment of acute appendicitis during 2019 and that United Healthcare, her insurer, declined to pay a penny of this charge. To substantiate this assertion she produced a single document—a purported invoice from United Healthcare dated November 29, 2019. This document shows charges of $68,977 for a 3-day hospital stay, "total insurance payments" of zero, and a balance due of $68,977.

For three reasons we conclude that this document was digitally altered and is fraudulent. First, the document shows an impossible, 9-digit, phone number for United Healthcare: 800-624-822. Second, the document unaccountably shows no explanation of the denial of benefits. Third, petitioner at trial offered no plausible explanation why her insurer would deny a claim for the cost of surgery requiring a 3-day hospital stay.

Alerted by the suspicious nature of the purported invoice, RA Libbin issued a summons to Johns Hopkins. In response the hospital stated that it had no record of treating petitioner as a patient during 2019 and no billing records matching the $68,977 of services shown on the purported invoice from United Healthcare. We accordingly sustain in full the disallowance of the claimed medical expense deduction.

The only other itemized deduction petitioner claimed was $10,000 for state and local taxes. Because this amount was less than the standard deduction ($12,200), the IRS allowed the standard deduction and disallowed the $10,000 deduction as a computational adjustment. We sustain those adjustments.

IV.    *Business Expense Deductions*

At trial the parties agreed that petitioner actually had no Schedule C consulting business during 2019 and that the expenses she reported on Schedule C were expenses allegedly incurred on behalf of Manticore. At trial we asked her why she would have incurred $89,828 of unreimbursed expenses on behalf of a partnership of which she was only a 50% partner. She replied that it was "common work that [she] had to pay for" and was related to "learnings" that she could "bring back to the company." We did not find this explanation credible.

A partner may not deduct partnership expenses on her individual tax return unless the partnership agreement specifically requires that such expenses be paid out of the taxpayer's own pocket. *See, e.g., Cropland Chem. Corp. v. Commissioner*, 75 T.C. 288, 295 (1980), *aff'd,*

[*8] 665 F.2d 1050 (7th Cir. 1981) (unpublished table decision); *Klein v. Commissioner*, 25 T.C. 1045, 1051–52 (1956). Petitioner asserts that Manticore's partnership agreement required her to pay these expenses. But she refused to supply a complete copy of Manticore's partnership agreement or a copy of its 2019 partnership tax return, citing "confidentiality."

There is no all-purpose "confidentiality" privilege in the Tax Court (or in any other court). Petitioner cannot plausibly urge that the partnership agreement required her to pay these expenses while refusing to produce a copy of the agreement. For this reason alone, petitioner has failed to show that she is entitled to the deductions claimed on her Schedule C.

Apart from this threshold problem, petitioner wholly failed to substantiate the deductions claimed. The credit card statements she produced were intentionally incomplete and appear to have been altered or forged. The same is true for her purported invoices. And we did not find her testimony in any respect credible.

A. *Section 162 Expenses*

1. *Advertising Expense*

Petitioner claimed a deduction of $1,479 for advertising expenses. To support this deduction she submitted a purported invoice from Tintash showing a $1,479 balance due for "business card design and brochure for BD." At trial petitioner did not explain the meaning of "BD." The invoice does not mention Manticore. Rather, it is billed to "Ishveen Chopra, Accounts Payable," at her home address.

The purported invoice shows no evidence of payment. To substantiate payment of $1,479, petitioner submitted an alleged credit card statement for a Discover account ending in 4260. According to Discover's records, petitioner during 2019 had no account ending in 4260. We therefore sustain the disallowance of this deduction.

2. *Depreciation and Section 179 Expense*

Section 167(a) allows a deduction for the exhaustion, wear and tear, or obsolescence of property used in a trade or business. Section 179 allows a taxpayer to elect to deduct as a current expense, within certain dollar limits, the cost of section 179 property in the year such property is placed in service. *See* § 179(a) and (b). To qualify as section 179

[*9] property, the equipment must (among other things) be acquired for use "in the active conduct of a trade or business." *See* § 179(d)(1)(C).

Petitioner claimed a deduction of $29,941 for various items allegedly used in Manticore's consulting business. As far as the record reveals, Manticore had no gross receipts for 2019: Petitioner showed zero gross receipts on her Schedule C, and she refused to submit a copy of Manticore's 2019 tax return into evidence. Petitioner thus failed to establish at trial that Manticore during 2019 was engaged "in the active conduct of a trade or business." *See* § 179(d)(1)(C). For that reason alone, petitioner has failed to prove her entitlement to a section 179 deduction.

Apart from this threshold problem, petitioner has failed to substantiate any of the claimed deductions:

- Petitioner allegedly paid $6,045 to B&H Photo for computer equipment, a smartphone, and a scanner. She supplied no credible evidence that these items were used for business rather than personal purposes. The purported invoices from B&H Photo show the purchase prices as being charged to a Discover credit card ending in 4260. Because petitioner had no Discover account ending in 4260, we find that these invoices are fraudulent. For both reasons we sustain the disallowance of these deductions.

- Petitioner allegedly paid $2,070 to Home Depot for a desk and related office furniture used in her home. She supplied no credible evidence that these items were used for business rather than personal purposes. The purported invoice from Home Depot shows the purchase price as being charged to a Discover credit card account ending in 4260. Because petitioner had no Discover account ending in 4260, we find that this invoice is fraudulent. For both reasons we sustain the disallowance of this deduction.

- Petitioner allegedly paid $14,511 to Definitive Healthcare for databases. The purported invoice from Definitive Healthcare shows no evidence of payment. To substantiate payment of $14,511, petitioner submitted a purported credit card statement for a Discover account ending in 4260. Because petitioner had no Discover account ending in 4260, we find that this charge is fraudulent. We accordingly sustain the disallowance of this deduction.

- Petitioner allegedly paid $2,578 to OriginLab for software. As proof of payment she submitted a purported AmEx credit card

[*10] statement. As explained below, the purported AmEx statements she offered into evidence appear to have been digitally altered in many respects. *See infra* pp. 16–17. In any event, if she did in fact purchase this software, she failed to establish what function the software performed and that it was used in a business actually conducted by Manticore (rather than for personal purposes). We accordingly sustain the disallowance of this deduction.

### 3. *Legal and Professional Services*

Petitioner allegedly paid $31,196 to Chen Law Firm, also known as NAmILG/Chen, for immigration services relating to her visa status. The purported invoices show payments made via PayPal on March 4 and 24, 2019. To substantiate these payments petitioner submitted a purported credit card statement for a Discover account ending in 4260, showing payments totaling $31,196 to NamILG/Chen. Because petitioner had no Discover account ending in 4260, we find that this invoice is fraudulent.

RA Libbin asked Chen Law Firm for any billing or payment information relating to petitioner or Manticore for 2019. In response the firm stated that it had no billing information for 2019 that matched the purported invoices of $18,718 and $12,478. The firm indicated that it had provided services to (and received payments from) petitioner during 2017 and 2018, but not during 2019.

In any event, the alleged payments to Chen Law Firm were for legal services relating to petitioner's personal immigration status. She failed to prove at trial that these expenses should properly be characterized as business rather than personal expenses. Even if petitioner had established that these were legitimate expenses she actually paid, we would deny the claimed deduction for that reason.

### B. *Expenses Subject to Section 274*

### 1. *Travel Expenses*

Petitioner claimed deductions of $8,688 for hotel expenses during 2019. She submitted purported receipts from Marriott hotels (for 6-day stays in Chicago, San Diego, and New Orleans), from Hilton (for a 5-day stay in Houston), and from 1 Hotel Central Park (for a 6-day stay in New York).

**[\*11]** We find that these documents were digitally manipulated and are fraudulent. The purported invoices from Marriott show its website address as www.mariott.com, omitting an "R" from the company's name. Three invoices show suspiciously late check-out times (4:43 p.m., 5:14 p.m., and 11:10 p.m.). And the invoices do not show the full range of state and local taxes and related charges that commonly appear on hotel receipts.

Assuming arguendo that one or more of these receipts are genuine, petitioner failed to satisfy the strict substantiation requirements of section 274(d). She testified vaguely that she visited Houston and Chicago for conferences and the other cities "on business," with no elaboration about the type of conference or the nature of the business allegedly conducted. She thus failed to substantiate "the business purpose of the expense" by "adequate records or by sufficient evidence corroborating [her] own statement." *See* § 274(d); Temp. Treas. Reg. § 1.274-5T(c).

2. *Vehicle Expenses*

Petitioner reported vehicle expenses of $13,309, allegedly incurred on behalf of Manticore. She testified that the trips were for client meetings or conventions, many in such distant venues as New York, Massachusetts, Georgia, North Carolina, West Virginia, Mississippi, Illinois, and Louisiana. Two of the trips were to alleged conferences in Chicago and New Orleans, for which we have found her hotel receipts to be fictitious. Because she refused to supply a copy of Manticore's 2019 tax return, there is no evidence that the scale of its activities could have required that she take eight lengthy out-of-state trips.

In an effort to substantiate these trips, petitioner submitted a QuickBooks log. This log shows 72 trips in her Ford Focus totaling 22,947 miles. Petitioner did not establish when the log was created, and she offered no contemporaneous notes to support the entries. The log includes no odometer readings, and petitioner did not otherwise offer odometer readings into evidence. The log does not show the address of any of the 72 destinations allegedly visited. Most importantly, the cryptic explanations do not establish the business purpose of the alleged trips. Many entries are described simply as a "lunch," a "meeting," or a "conference," employing acronyms and abbreviations that did nothing to establish a genuine business nexus.

This log, which petitioner's testimony did not elucidate, falls short of meeting the strict substantiation requirements of section 274. On the

**[\*12]** basis of the evidence she submitted, we cannot ascertain the business purpose of her alleged travels. We therefore sustain the disallowance of a deduction for vehicle expenses.

## V.  *Civil Fraud Penalty*

### A.  *Supervisory Approval*

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." *See Baxter v. Commissioner*, 910 F.3d 150, 169 n.3 (4th Cir. 2018), *aff'g* T.C. Memo. 2017-150. As a threshold matter, respondent must show that he complied with section 6751(b)(1). *See Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017) (ruling that "compliance with § 6751(b) is part of the Commissioner's burden of production" under section 7491(c)), *aff'g in part, rev'g in part* T.C. Memo. 2015-42.

In *Belair Woods, LLC v. Commissioner*, 154 T.C. 1, 14–15 (2020), we explained that the "initial determination" of a penalty assessment is typically embodied in a letter "by which the IRS formally notifie[s] [the taxpayer] that the Examination Division ha[s] completed its work and . . . ha[s] made a definite decision to assert penalties." Once the Commissioner introduces evidence sufficient to show written supervisory approval, the burden shifts to the taxpayer to show that the approval was untimely, i.e., "that there was a formal communication of the penalty [to the taxpayer] before the proffered approval" was secured. *Frost v. Commissioner*, 154 T.C. 23, 35 (2020).

Respondent has produced the Civil Penalty Approval Form by which RA Libbin recommended assertion of a fraud penalty against petitioner. RA Libbin's immediate supervisor, Ms. Gunn, signed that form on June 9, 2022. The recommendation to assert fraud penalties was first communicated to petitioner in the Notice dated October 27, 2022, with an attached Form 4549–A, Income Tax Examination Changes, showing the penalty calculation. Respondent has thus met his burden of production by showing timely approval. *See ibid.*

### B.  *Existence of Fraud*

"If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the underpayment due to fraud. Respondent has the burden

**[\*13]** of proving fraud, and he must prove it by clear and convincing evidence. *See* § 7454(a); Rule 142(b); *Richardson v. Commissioner*, T.C. Memo. 2006-69, 91 T.C.M. (CCH) 981, 996, *aff'd*, 509 F.3d 736 (6th Cir. 2007).

To sustain his burden, respondent must establish two elements: (1) that there was an underpayment of tax for each year at issue and (2) that at least some portion of the underpayment for each year was due to fraud. *Hebrank v. Commissioner*, 81 T.C. 640, 642 (1983). If the Commissioner proves that some portion of an underpayment was due to fraud, then the "entire underpayment shall be treated as attributable to fraud" unless the taxpayer shows, by a preponderance of the evidence, that the balance was not so attributable. § 6663(b).

Respondent has carried his burden of establishing, by clear and convincing evidence, that petitioner understated her income and underpaid her tax for 2019. And respondent clearly proved that a significant portion of the underpayment (at least) was due to fraud.

Fraud is intentional wrongdoing designed to evade tax believed to be owing. *Neely v. Commissioner*, 116 T.C. 79, 86 (2001). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977). Fraud is not to be presumed or based upon mere suspicion. *Petzoldt v. Commissioner*, 92 T.C. 661, 699–700 (1989). But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. *Id.* at 699.

The Commissioner satisfies his burden of proof by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." *Parks v. Commissioner*, 94 T.C. 654, 661 (1990). The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may be inferred from a pattern of conduct. *Webb v. Commissioner*, 394 F.2d 366, 379 (5th Cir. 1968), *aff'g* T.C. Memo. 1966-81; *Stone v. Commissioner*, 56 T.C. 213, 224 (1971).

Circumstances that may indicate fraudulent intent, often called "badges of fraud," include, but are not limited to: (1) understating income, (2) keeping inadequate records, (3) giving implausible or inconsistent explanations of behavior, (4) concealing income or assets, (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) supplying incomplete or misleading information to a tax return

14

**[*14]** preparer, (8) providing testimony that lacks credibility, (9) filing false documents (including false tax returns), (10) failing to file tax returns, and (11) dealing in cash. *Schiff v. United States*, 919 F.2d 830, 833 (2d Cir. 1990) (per curiam); *Bradford v. Commissioner*, 796 F.2d 303, 307–08 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Parks*, 94 T.C. at 664–65; *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); *Morse v. Commissioner*, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, *aff'd*, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive, but the existence of several factors "is persuasive circumstantial evidence of fraud." *Vanover v. Commissioner*, T.C. Memo. 2012-79, 103 T.C.M. (CCH) 1418, 1420–21.

Several of these factors have no application here. Petitioner prepared her own tax returns, so she had no occasion to provide false information to a return preparer. Because the underpayments were due to fictitious deductions rather than unreported income, "dealing in cash," "concealing income or assets," and "engaging in illegal activities" have no relevance to this case. But we conclude that at least six badges of fraud show that petitioner acted with fraudulent intent.

### 1.    *Understating Income*

Substantially understating income is strong evidence of fraud, particularly if the understatement is not satisfactorily explained. *See id*. at 1421. An understatement of income can be accomplished by overstating deductions as well as by omitting income. *See Gould v. Commissioner*, 139 T.C. 418, 446–47 (2012), *aff'd*, 552 F. App'x 250 (4th Cir. 2014); *Estate of Temple v. Commissioner*, 67 T.C. 143, 161 (1976). Respondent's adjustments, which we have sustained, increased petitioner's taxable income to $161,453—seven times larger than the amount she reported, $22,116. The magnitude of the difference supplies evidence of fraud.

### 2.    *Keeping Inadequate Records*

Petitioner not only failed to supply adequate records of her expenses but actively falsified documents. She repeatedly refused to provide, to respondent's counsel or to the Court, a complete set of credit card statements for 2019, a copy of Manticore's partnership agreement, or a copy of Manticore's 2019 tax return. *See Meier v. Commissioner*, 91 T.C. 273, 302 (1988) (holding that a taxpayer's inadequate recordkeeping evidenced an intent "to conceal information" from the IRS). And the documents she did supply were digitally manipulated to a large degree.

[*15]          3.      *Giving Implausible or Inconsistent Explanations*

Petitioner offered to the IRS and the Court a variety of implausible explanations. She submitted five hotel receipts that are suspicious in many respects. *See supra* pp. 10–11. When asked at trial about the unusually late check-out times appearing on these receipts, she asserted that she was a member of each hotel's "reward program." She could not explain at trial what level of membership in a reward program would enable check-out times as late as these. In her Posttrial Brief she said she "does not handle administrative work such as membership renewals."

One purported credit card statement lists transactions out of chronological order. Two alleged purchases from B&H Photo on January 12 and 13—both of which we have found to be fictitious, *see supra* p. 9—appear on the statement *before* a transaction dated January 10. By way of explanation petitioner asserted that the items she purchased were "back ordered." That explanation was nonsensical. It is obvious that petitioner, when digitally manipulating the document, put the purported B&H Photo transactions in the wrong place.

In response to a summons, Discover informed RA Libbin that it had no record of any Discover account in petitioner's name ending in 4260. Confronted with this quandary, petitioner theorized that Discover had neglected to provide the IRS with information about her *jointly held* accounts. This explanation was not credible. The Discover account was titled in the name of petitioner individually: "Ishveen K Chopra," followed by her address of record. And even if it were a joint account, Discover would presumably have identified it in response to a summons seeking petitioner's records.

We have determined that the purported invoice from United Healthcare was fraudulent. *See supra* p. 7. When asked at trial why her insurer would have declined coverage for a three-day hospital stay, petitioner testified that her coverage was a "minimal insurance" plan that only covers "normal physician visits," not surgeries. Petitioner further insisted that United Healthcare provided her with no explanation whatever for the denial of coverage. This implausible testimony, like that described above, provides additional evidence of fraudulent intent.

          4.      *Failing to Cooperate with Tax Authorities*

Throughout these proceedings petitioner failed to cooperate with respondent. RA Libbin asked her to supplement her production of

[*16] financial records, but she refused. Eventually he had to summons her bank statements. *See Good v. Commissioner*, T.C. Memo. 2012-323, 104 T.C.M. (CCH) 595, 608 (finding lack of cooperation where revenue agent was forced to summons taxpayer's bank records).

We ordered petitioner to produce AmEx and Discover statements for the entire 2019 year. These documents (if they existed) were important given respondent's contention that the 5 months of statements she had supplied were fictitious. Petitioner refused to comply with our Order, asserting that financial records other than the 5 months of statements "hav[e] no connection with the 2019 tax-related claimed amounts" and were "irrelevant and immaterial." She refused to supply a copy of Manticore's 2019 partnership return—asserting that it was "irrelevant and immaterial to this case"—even though Manticore was the entity on whose behalf she allegedly paid $89,828 of expenses. Because of her repeated lack of cooperation, we ultimately imposed sanctions. *See supra* p. 5.

On March 12, 2024, petitioner filed a Motion requesting that her trial be conducted remotely. She represented that she had discussed the motion with respondent's counsel and that he had no objection. Both representations were false, and we denied the Motion. Her duplicitous and obstructive behavior throughout this case is a badge of fraud.

### 5.     *Lack of Credibility of Taxpayer's Testimony*

We did not find petitioner to be a credible witness. We have noted above numerous points on which we found her testimony to lack credibility. Her primary contention—that she should not be held responsible for mistakes of the businesses with which she dealt—was wholly unconvincing. Discover, United Healthcare, Johns Hopkins, and Chen Law Firm all denied having records matching her claims. We trust their word over hers.

### 6.     *Filing False Documents*

Petitioner filed a false income tax return for 2019, claiming deductions for expenditures that did not exist. And she supplied multiple false documents to respondent and the Court. We have already noted many indicia of digitally manipulated documents. Here are a few more:

- Different account numbers appear within the November Discover statement. The statement purports to be her credit card

**[*17]** statement for a card ending in 4260, but the statement elsewhere lists an account ending in 9954.

- Inconsistent dates and amounts are shown for "required minimum payments." The October AmEx statement lists the minimum payment—on the same page—as both $25 and $27. The March Discover statement lists both April 23 and May 23 as the payment due date.

- The billing periods on the April and November Discover statements list a date range of 30 days, but they show a billing period of only 28 days. The February AmEx statement lists a reward balance of $91 as of February 30, 2019—a date that does not exist.

- The June Discover statement lists an opening cashback rewards balance of $11.40, a monthly accrual of $0.55, and a closing balance $19.45. The sum of the first two amounts is $11.95.

Considering the record as a whole, we find that respondent has established, by clear and convincing evidence, that petitioner's underpayment of tax for 2019 was attributable to fraud. Petitioner did not establish, by a preponderance of the evidence, that any portion of the underpayment was not attributable to fraud. *See* § 6663(b). We thus sustain respondent's determination that petitioner for 2019 is liable for a civil fraud penalty of $22,890.[2]

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[2] Given our disposition we need not consider respondent's alternative determination that petitioner is liable for an accuracy-related penalty.